STATE OF NORTH CAROLINA v. ALTON JAMES HENDERSON

No. 8

(Filed 13 March 1974)

1. Criminal Law § 84 — evidence unconstitutionally obtained

   Evidence unconstitutionally obtained is excluded in both State and Federal courts as essential to due process.

2. Criminal Law § 66— pretrial identification procedures — due process

   The test under the due process clause as to pretrial identification procedures is whether the totality of the circumstances reveals pretrial procedures so unnecessarily suggestive and conducive to irreparable mistaken identification as to offend fundamental standards of decency, fairness and justice.

3. Constitutional Law § 32; Criminal Law § 66— confrontation for identification prior to criminal proceedings — right to counsel

   Defendant did not have a constitutional right to the presence of counsel at an out-of-court identification proceeding where no adversary judicial criminal proceedings had been initiated against defendant prior to the confrontation.

4. Criminal Law § 66— illegal pretrial identification — in-court identification

   Illegality of an out-of-court identification will render inadmissible an in-court identification unless it is first determined on *voir dire* that the in-court identification is of independent origin.

1

5. **Criminal Law § 66— illegal pretrial identification — in-court identification —. independent origin**

Even if the single exhibition of defendant to a rape victim was impermissibly suggestive and conducive to misidentification, the victim was properly allowed to identify defendant in court as her assailant where the trial court found upon competent *voir dire* evidence that the in-court identification was based on the victim's observation of defendant at the crime scene and was not tainted by the pretrial confrontation.

6. **Criminal Law §§ 50, 68— use of "I think" — defendant's question to victim — competency to show identity**

Rape victim's testimony that her assailant "asked me if I knew a family I didn't know. I think the name was Wood" was not rendered inadmissible by use of the term "I think" and became competent on the question of identity when defendant testified on cross-examination that he worked for a man named Woods.

7. **Burglary and Unlawful Breakings § 1— first degree burglary defined**

Burglary in the first degree is the breaking and entering during the nighttime of an occupied dwelling or sleeping apartment with intent to commit a felony therein. G.S. 14-51.

8. **Burglary and Unlawful Breakings § 5— evidence of breaking — locked doors**

There was sufficient evidence of a breaking to support a conviction of first degree burglary where the prosecuting witness testified that she had locked all three doors of her trailer shortly before defendant's entry, it not being necessary for the State to offer direct evidence that the locks on the doors had been tampered with or that force had been applied to the locks.

9. **Rape § 1— force required**

The force necessary to constitute rape need not be actual physical force since fear, fright or coercion may take the place of physical force.

10. **Rape § 1— consent induced by violence**

Although consent is a perfect defense to a charge of rape, there is no legal consent when it is induced by violence or threat of violence.

11. **Rape § 5— sufficiency of evidence**

Although the State introduced a statement in which the prosecutrix related that her assailant wasn't as rough after she "submitted," the State's evidence was sufficient to require a jury determination as to whether defendant obtained carnal knowledge of the prosecutrix forcibly and against her will where it tended to show that the prosecutrix was subjected to a violent beating, she struggled to get away, she was choked until she "felt all the air and everything going out of her body," she was then pushed onto the bed, pinned down and raped, and that she did not consent to have intercourse with defendant.

12. **Burglary and Unlawful Breakings § 6— instructions — breaking as element of first degree burglary**

In a first degree burglary case, trial court's instruction that the State must prove "that the building was entered by the defendant com-

State v. Henderson

ing into the mobile home, and coming into the bedroom would be an entering" did not constitute an expression of opinion that the State did not have to show a "breaking" where immediately prior to such instruction the court charged on the element of "breaking" and the court specifically mentioned both the elements of breaking and entering when charging on other elements of the crime of first degree burglary.

13. **Criminal Law § 114— expression of opinion — defendant's alibi testimony**

The trial court did not express an opinion concerning the strength of defendant's defense when he twice stated that defendant's alibi was in the form of his own testimony.

14. **Criminal Law §§ 135, 138— instructions — punishment — death penalty**

In a rape and burglary case in which the jury requested further instructions regarding punishment and whether it could make a recommendation, under the circumstances of this case the trial court did not err in failing to instruct the jury that a verdict of guilty upon either the charge of rape or upon the charge of first degree burglary would result in the imposition of the death penalty.

15. **Constitutional Law § 31— failure of investigating officers to make laboratory tests**

Defendant in a rape and burglary case was not denied a fair trial because the investigating officers failed (1) to make a microscopic comparison of a blond hair found on defendant's clothing and a hair taken from the head of the prosecutrix and (2) to make a laboratory comparison of defendant's blood and the blood found on the bed clothing belonging to the prosecutrix.

16. **Burglary and Unlawful Breakings § 6— instructions on breaking — entry through open door**

The trial court in a burglary case did not err in failing to instruct the jury that if a door to the victim's mobile home was open in the slightest degree, entering the trailer through that door would not be a breaking, where there was no testimony indicating that any door of the mobile home was opened at the time defendant entered it and the uncontroverted evidence was that all three doors were locked prior to defendant's entry.

17. **Burglary and Unlawful Breakings § 6— instructions on breaking**

Trial court's instruction in a burglary case that a breaking "simply means the opening or removal of anything blocking entrance, so the pushing open of a door that is latched would be a breaking," while disapproved, did not constitute prejudicial error where the court in other portions of the charge correctly instructed on the law of breaking as related to first degree burglary.

18. **Rape § 6— failure to submit lesser offenses**

The trial court in a rape case did not err in failing to submit the lesser included offenses of assault with intent to commit rape and assault on a female where all the evidence showed a completed act of intercourse, defendant's defense was alibi, and there was no evidence to support either of the lesser included offenses.

State v. Henderson

19. **Burglary and Unlawful Breakings § 6— first degree burglary — intent to rape — instructions**

The trial court's instructions on intent to commit rape as it related to a charge of first degree burglary were adequate, although the court failed to instruct the jury that defendant must have had an intent to gratify his passions notwithstanding any resistance on the part of the prosecutrix, particularly since the record shows that the intent was, in fact, executed.

20. **Burglary and Unlawful Breakings § 6— burglary — intent to rape — instructions — non-burglarious breaking and entering**

In a first degree burglary case in which the felonious intent was allegedly an intent to commit rape, the trial court did not err in failing to instruct the jury that it could return a verdict of guilty of the lesser included offense of non-burglarious breaking and entering if defendant entered the prosecutrix' room without intent to use force but only formed the intent to accomplish his purpose by force after she screamed where there was no evidence to support such instruction and where defendant's counsel did not request an instruction on such contention.

21. **Rape § 6— instructions — degree of resistance required**

The trial court in a rape case did not err in failing to describe the degree of resistance required by the prosecutrix and to relate it to the facts of the case.

22. **Criminal Law § 113— recapitulation of evidence — failure to include evidence elicited on cross-examination**

In a prosecution for rape and first degree burglary, defendant was not prejudiced by the court's failure to include in the charge evidence elicited by defense counsel on cross-examination as to the victim's nearsightedness, the length of time the victim observed defendant at a pretrial confrontation, her inability to recognize the color of her assailant's shirt, the absence of damage to her locks, or her inconsistent statement concerning being knocked off her bed by her assailant.

23. **Constitutional Law § 36; Criminal Law § 135; Burglary and Unlawful Breakings § 8; Rape § 7— constitutionality of death penalty for rape and burglary**

Sentence of death for the crimes of rape and first degree burglary does not constitute cruel and unusual punishment prohibited by the Eighth and Fourteenth Amendments to the United States Constitution.

Chief Justice BOBBITT and Justices HIGGINS and SHARP dissenting as to death sentences.

APPEAL by defendant from *Webb, S.J.,* 27 August 1973 Session, ALAMANCE Superior Court. Defendant was tried upon a bill of indictment charging him with first degree burglary and rape of Judith Ann Strader.

Prior to his trial, defendant was represented by Mr. Wiley P. Wooten, who was appointed by the court on 20 June 1973.

Thereafter defendant employed Mr. Fred Darlington, III, of the Alamance County Bar to represent him on these charges, and by Order dated 9 August 1973 Mr. Wooten was relieved of further responsibilities as court-appointed counsel. Prior to his discharge, Mr. Wooten had obtained an Order committing defendant to Cherry Hospital for sixty days for observation and determination of his competency to stand trial upon the pending charges. The Court was furnished with the diagnostic conference and discharge summary, signed by Dr. Eugene V. Maynard, of the Cherry Hospital Staff, which stated that examination, observation and testing performed at Cherry Hospital revealed no evidence of insanity or any serious mental disorder which might interfere with defendant's competency to stand trial upon the charges of first degree burglary and rape.

Upon his arraignment defendant entered a plea of not guilty to both charges.

The State's evidence, in substance, discloses the following:

Judith Ann Strader testified that she was employed as a teacher by the Burlington City School system. On the night of 18 June 1973, she returned to her mobile home in Terrywood Mobile Home Park at about 9:30 p.m. after attending a ceramics class in Burlington. She lived in a 65 foot mobile home which contained two bedrooms, a living room, dining room and kitchen. The master bedroom is at one end of the mobile home and the kitchen is at the other end. The living room is located between the kitchen and master bedroom and the front door of the mobile home enters into the living room. There is a back door to the kitchen and a back door entering the hall next to the bathroom serving the master bedroom. After visiting a neighbor, she locked the doors of the mobile home, undressed and put on a robe. She lay down on her bed in the master bedroom between 10:30 and 10:45 p.m. and dropped off to sleep. She had planned to get up and straighten the kitchen and had therefore left the lights on in the living room. There were three Duke Power night-lights located near her trailer. One light was near the front of the mobile home, one was near the rear of the trailer and one light was across the street so that it shone almost directly into her bedroom window. The moon was about half full on this night. She was awakened by the barking of her Pekinese dog, and when she sat up in the bed, she saw a man standing in the doorway of her bedroom.

At this point the Solicitor asked if the man she saw on that night was in the courtroom. Defendant's counsel objected and asked to be heard. After a voir dire hearing, the trial judge overruled defendant's objection and motion to suppress. (We will hereafter more fully discuss the voir dire hearing and the resulting ruling by the trial judge.)

The jury returned to the courtroom and Judith Ann Strader identified defendant as her assailant. She further testified:

"When I was aroused by my dog, I saw the man standing in the doorway of my bedroom and I raised up on my arms and looked and first I felt shocked and then he lunged at me. I was struggling to get away, and I screamed two or three times, I am not sure, and I screamed and when I did he hit me with his fist in my face and bruised my upper face and forehead, my eyes, the side of my face and my lip and I kept struggling the best I knew how to get away and at this time he started choking me. He didn't say anything at all at that time. He choked me almost to the point I felt all the air and everything going out of my body, and he pushed me up in the bed and at this time he did rape me, keeping one hand at my neck part of the time and my body was penned down. My body was penned down. The defendant's private parts entered my private parts. I didn't give consent for him to have intercourse with me. I didn't give the defendant or any other person consent or permission to come into my mobile home that night. . . . "

Miss Strader further stated that defendant remained in her trailer for nearly an hour, and upon the pretext of quieting her barking dog she managed to escape and flee to a nearby trailer occupied by Mr. and Mrs. Don Hall. The Halls summoned law enforcement officers, and after she talked to them she was carried to the hospital.

Mrs. Elizabeth Hall testified that in the early morning hours of 19 June 1973, Judith Strader came to her mobile home in a hysterical condition. Miss Strader told her that there was a man in her trailer and that he had raped her. Mrs. Hall said that at that time she looked out the window and saw a beige colored 1964 Chevelle automobile with a dent in the side and back fender. The automobile was being operated by a male person. She had previously seen defendant drive this car. Mrs. Hall testified that there was a knot and a bruise over Judith Strader's

right eye, a bruise on her left eye, red marks on her throat and that her lip was swollen.

Mr. James Little of the Alamance County Sheriff's Department testified that in response to a call he went to Judith Ann Strader's mobile home. The only person there was Mr. Don Hall. He found the bedroom "torn up," the bedspread on the floor and blood on the sheets and pillow case. He talked to Miss Strader at about 1:30 a.m. on 19 June 1973. The statement made to him by Miss Strader was admitted into evidence under a proper limiting instruction.

Mr. James Andrews of the Alamance County Sheriff's Department testified that as a result of a call, he stopped defendant at about 1:30 a.m. on 19 June 1973 on Highway 49 near Haw River. Defendant was operating a 1964 light colored Chevelle with a damaged back fender. At his request, defendant accompanied him to the Alamance County Sheriff's Department where Officer Talbert advised defendant of his Constitutional rights.

Mr. Kenneth Talbert of the Alamance County Sheriff's Department stated that he talked with defendant during the early morning hours of 19 June 1973. After advising defendant of his rights he began to question him, but defendant said that he did not wish to answer any questions until he had contacted an attorney. However defendant agreed to an inspection of his clothing, and Mr. Talbert found two blond hairs about 12 to 18 inches in length on defendant's clothes.

The State rested and defendant's motions as of nonsuit as to both charges were denied.

Defendant, testifying in his own behalf, stated that he lived with his wife and two children in a mobile home in Terrywood Park. His daughter had sandy blond hair. He had seen Judith Strader, who was acquainted with his wife, around the trailer park. On 18 June 1973 he worked until about 4:00 p.m. for Alcar Tree Company. On that day, he wore a long-sleeved work shirt, trousers and laced-up boots. Upon leaving work, he went to his mother's home in Graham for a short visit, then to the ABC store in Graham where he purchased a pint of vodka. He then went to Dean Bonding Company where he had a drink, then to Mebane where he drank two beers, then into Caswell County where he took another drink of vodka, then returned to

Mebane where he drank three beers, then to Hillsborough where he had two beers. He started to Burlington on Highway I-85, and he was stopped at about 8:30 p.m. and cited for speeding 80 mph in a 65 mph zone. From there he proceeded to Gus' Drive-In on Highway 54 between Burlington and Graham where he drank more beer. He then went to a cafe for more beer. He left the cafe at about 11:00 p.m. and returned to Gus' Drive-In where he remained until about midnight. He returned to Highway I-85 and left that highway at the Haw River Exit where he stopped and called his wife from a telephone booth. After talking to her for 15 to 25 minutes, he proceeded through and beyond Haw River, North Carolina, on Highway 49 where he was stopped by a police officer. He did not go back to Terrywood Mobile Home Park after he left there at about 6:00 a.m. on the morning of the 18th. The scratches on his arms were caused by his tree cutting work. He had been convicted of assault with intent to commit rape in 1969. He could not remember the number of assault charges for which he had been convicted.

Upon completion of defendant's testimony, both the State and defendant rested.

The jury returned verdicts of guilty of first degree burglary and rape.

The trial judge pronounced judgment sentencing Alton James Henderson to death by asphyxiation.

*Attorney General Robert Morgan and Associate Attorney Richard F. Kane for the State.*

*W. R. Dalton, Jr., and Fred Darlington III for defendant appellant.*

*David E. Kendall for the NAACP Legal Defense Fund.*

BRANCH, Justice.

Defendant assigns as error the admission, over his objection, of the in-court identification testimony by the prosecuting witness, Judith Strader. He argues that this testimony was tainted by an out-of-court identification procedure which violated Constitutional rights guaranteed to him by the Sixth and Fourteenth Amendments to the United States Constitution in that the identification procedure was conducted in the absence of counsel and was impermissibly suggestive and conducive to mistaken identification.

Since the State did not offer evidence in presence of the jury concerning identification of the accused at a lineup or a showup, we are only concerned with the admissibility of the in-court identification testimony.

[1, 2]    Since *Mapp v. Ohio,* 367 U.S. 643, 6 L.Ed. 2d 1081, 81 S.Ct. 1684, the general rule has been that evidence unconstitutionally obtained is excluded in both State and Federal Courts as essential to due process — not as a rule of evidence but as a matter of Constitutional law. *State v. Rogers,* 275 N.C. 411, 168 S.E. 2d 345; *State v. Colson,* 274 N.C. 295, 163 S.E. 2d 376. The test under the due process clause as to pretrial identification procedures is whether the totality of the circumstances reveals pretrial procedures so unnecessarily suggestive and conducive to irreparable mistaken identification as to offend fundamental standards of decency, fairness and justice. *Foster v. California,* 394 U.S. 440, 22 L.Ed. 2d 402, 89 S.Ct. 1127; *Stovall v. Denno,* 388 U.S. 293, 18 L.Ed. 2d 1199, 87 S.Ct. 1967; *Rochin v. California,* 342 U.S. 165, 96 L.Ed. 183, 72 S.Ct. 205; *State v. Haskins,* 278 N.C. 52, 178 S.E. 2d 610; *State v. Austin,* 276 N.C. 391, 172 S.E. 2d 507; *State v. Rogers, supra.*

These due process requirements have been enlarged by case holdings requiring presence of counsel at lineups or showups. *United States v. Wade,* 388 U.S. 218, 18 L.Ed. 2d 1149, 87 S.Ct. 1926; *Gilbert v. California,* 388 U.S. 263, 18 L.Ed. 2d 1178, 87 S.Ct. 1951; *Stovall v. Denno, supra.* The broad principles set forth in *Wade, Gilbert* and *Stovall* resulted in many diverse interpretations by other appellate courts. One of the questions causing conflict in the appellate courts was at what stage of the proceedings the rule requiring presence of counsel became operative.

Our Court has generally held that an accused has a Constitutional right to presence of counsel at an in-custody identification proceeding, and when counsel is not present and there is no voluntary waiver of counsel by the accused, testimony of witnesses that they identified the accused at such confrontation must be excluded. Furthermore, an in-court identification of the accused by a witness who took part in such pretrial confrontation must be excluded unless it is first determined by the trial judge on voir dire that the in-court identification is of independent origin and thus not tainted by the illegal pretrial identification procedure. *United States v. Wade, supra; Gilbert v. California, supra; State v. Bass,* 280 N.C. 435, 186 S.E. 2d

384; *State v. Smith,* 278 N.C. 476, 180 S.E. 2d 7; *State v. Austin, supra; State v. Rogers, supra.*

The recent case of *Kirby v. Illinois,* 406 U.S. 682, 32 L.Ed. 2d 411, 92 S.Ct. 1877, which defendant cites and relies upon, considerably limits the stage at which the right to counsel attaches in pretrial identification procedures. In that case, the United States Supreme Court held that a person's Sixth and Fourteenth Amendment right to counsel in pretrial identification procedures attaches only "at or after the time that adversary judicial proceedings have been initiated against him." See *State v. Mems,* 281 N.C. 658, 190 S.E. 2d 164. Although our Court's rather broad language might appear to be at odds with the holding in *Kirby,* examination of the actual holdings of this Court shows that our interpretation of the right to counsel at pretrial identification procedures has often comported with the rationale of the holding in *Kirby, e.g.,* we have held that identifications made during the investigatory stage of proceedings were not in the critical stage, requiring presence of counsel. *State v. Mems, supra; State v. McNeil,* 277 N.C. 162, 176 S.E. 2d 732. In *State v. Wright,* 274 N.C. 84, 161 S.E. 2d 581, this Court held that defendant's right to counsel in a pretrial identification procedure was not violated until the proceeding " . . . lost its character as a pretrial investigative procedure and became a 'critical' stage . . . " requiring the presence of counsel. Even so, the holding in *Kirby* considerably narrows our interpretation as to when the right to counsel attaches in pretrial identification proceedings.

It is not argued that defendant was an indigent and subject to the provisions of Article 36 of Chapter 7A of the General Statutes. However, we note that the General Assembly amended G.S. 7A-451(b) (2), effective 10 April 1973, to require counsel for indigents at pretrial identification proceedings *only after formal charges have been preferred* and at which the presence of the indigent was required. This amendment apparently stems from the holding in *Kirby.*

[3]   Here, the alleged rape occurred after midnight on 19 June 1973. Judith Strader remained at a nearby neighbor's home until police officers arrived. She was questioned by them, and thereafter she was taken to the hospital for examination and treatment. The record does not disclose at what time she returned from the hospital. Defendant was taken to the Sheriff's Department at about 1:30 a.m. on the morning of 19 June 1973. The

confrontation between Judith Strader and defendant occurred at the Sheriff's Department at about 10:30 a.m. on the same day. The record does not indicate that any adversary judicial criminal proceedings had been initiated against defendant prior to the confrontation. The record *does* show that a warrant was served on defendant on the same day. There had been no previous identification of defendant. It is therefore reasonable to infer that the warrant was served after the confrontation at the Sheriff's Department, and that at the time of the confrontation the proceeding was investigatory rather than accusatory. Thus the proceeding had not reached the critical stage which required the presence of counsel for defendant.

Defendant further contends that the confrontation offended fundamental standards of decency, fairness and justice so as to deny him his Constitutional right of due process.

The practice of showing suspects singly to persons for purposes of identification has been widely condemned. *Stovall v. Denno, supra; State v. Wright, supra.* However, whether such a confrontation violates due process depends on the totality of the surrounding circumstances. *Stovall v. Denno, supra.*

We recognize that there are circumstances under which the single exhibition of a suspect may be proper. The landmark case of *Stovall v. Denno, supra,* held that the showing of a single suspect in a hospital room while he was handcuffed to police officers did not violate due process because the possibility of the impending death of the witness required an immediate confrontation. Our Court has held that there was no violation of due process when there were "unrigged" courtroom and station house confrontations which amounted to single exhibitions of the accused. *State v. Tuggle,* 284 N.C. 515, 201 S.E. 2d 884; *State v. Bass, supra; State v. Haskins, supra; State v. Gatling,* 275 N.C. 625, 170 S.E. 2d 593. Similarly we have recognized that a confrontation which takes place when a suspect is apprehended immediately after the commission of the crime may be proper. *State v. McNeil, supra.*

Whether an accused has been denied due process by a showup or a single exhibition of the accused requires an application of the recognized principles of law to the total circumstances. This often presents a difficult task.

Here the fact that the single exhibition of defendant was held within a short time and as soon as feasible after the assault

when the prosecuting witness had the opportunity to closely observe her assailant is counterbalanced by the fact that defendant was in custody under circumstances which would have easily permitted the formation of a lineup. However, the facts of this case do not require decision of this question. Even if we were to concede the confrontation to have been impermissibly suggestive and conducive to misidentification, and we do not, we are of the opinion that the in-court identification was properly admitted into evidence.

[4]   It is well established that the primary illegality of an out-of-court identification will render inadmissible the in-court identification unless it is first determined on voir dire that the in-court identification is of independent origin. *Wong Sun v. United States,* 371 U.S. 471, 9 L.Ed. 2d 441, 83 S.Ct. 407; *State v. Bass, supra; State v. Austin, supra; State v. Rogers, supra; State v. Wright, supra.*

The recent case of *Neil v. Biggers,* 409 U.S. 188, 34 L.Ed. 2d 401, 93 S.Ct. 375, is strikingly similar to instant case. In *Neil,* the defendant was accused of rape. The evidence against him included testimony by the prosecutrix of a pretrial police showup which consisted of two detectives walking the defendant past her.

In that case, the Court noted:

" . . . The victim spent a considerable period of time with her assailant, up to half an hour. She was with him under adequate artifical (sic) light in her house and under a full moon outdoors, and at least twice, once in the house and later in the woods, faced him directly and intimately. . . . Her description to the police, which included the assailant's approximate age, height, weight, complexion, skin texture, build, and voice, . . . was more than ordinarily thorough. She had 'no doubt' that respondent was the person who raped her. . . . She testified . . . that there was something about his face 'I don't think I could ever forget.' "

In holding that the evidence was properly admitted and that the identification was reliable even though the confrontation procedure was suggestive, the Court set out certain factors to be considered in evaluating the likelihood of mistaken identification, including: (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior de-

scription of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation.

In instant case, upon objection and motion to suppress the identification testimony, the trial judge excused the jury and conducted a voir dire hearing. On voir dire, Judith Strader positively identified defendant as her assailant. She testified that the lights were on in her living room and that there were three Duke Power nightlights near her trailer, one of which shone almost directly into her bedroom window. The moon was half full and "there was plenty of light for me to recognize the face that I saw." She further stated that defendant was in her bedroom for about one hour and that after he had raped her, "we must have spent at least 30 or 35 minutes . . . he kept on talking to me." At that time she observed defendant very carefully because she "was looking for facial characteristics, things I might be able to pick out." On cross-examination she stated that her identification was based on his "hairline, length of hair, eyebrows and lips" and that defendant was wearing a shirt, trousers and brogan type laced boots. She averred that she had no doubt whatever about defendant being the man who was in her trailer on the night of the alleged rape and she based her identification " . . . on the face that I saw that night and the face, you don't forget, I won't ever forget it . . . . "

The testimony of Miss Strader was the sole evidence offered on voir dire.

At the conclusion of the voir dire hearing the trial judge found as a fact:

" . . . that the witness' identification of the defendant in the courtroom is based on her observation of the alleged person in the trailer on the night of June 18, 1973, and is not tainted by any suggestion when she saw him at the sheriff's office at a later hour on the following day.

The defendant's motion to suppress the testimony as to the identification is OVERRULED."

In the recent case of *State v. Tuggle, supra,* Chief Justice Bobbitt concisely stated the rules governing voir dire hearings when identification testimony is challenged, to wit:

"When the admissibility of in-court identification testimony is challenged on the ground it is tainted by

out-of-court identification(s) made under constitutionally impermissible circumstances, the trial judge must make findings as to the background facts to determine whether the proffered testimony meets the tests of admissibility. When the facts so found are supported by competent evidence, they are conclusive on appellate courts. *State v. McVay* and *State v. Simmons,* 277 N.C. 410, 417, 177 S.E. 2d 874, 878 (1970); *State v. McVay* and *State v. Simmons,* 279 N.C. 428, 432, 183 S.E. 2d 652, 655 (1971); *State v. Morris,* 279 N.C. 477, 481, 183 S.E. 2d 634, 637 (1971)."

Here the uncontradicted voir dire evidence shows that the prosecuting witness spent approximately an hour with her assailant in a room lighted by interior and exterior artificial light supplemented by a half full moon. She gave careful attention to and noted defendant's clothing and his physical features including his hairline, eyebrows and lips. Miss Strader at no time identified any other person as her assailant. The actual identification procedure occurred within ten or eleven hours of the assault. The victim of the rape was a school teacher who, on the voir dire hearing tellingly voiced the reliability of her testimony by stating that she based her identification "on the face I saw that night . . . you don't forget, I won't ever forget it."

The Court's findings on the critical facts were amply supported by competent evidence, and are therefore conclusive on this Court.

**[5]** We hold that under the totality of the circumstances the in-court identification of defendant was not tainted by the out-of-court confrontation and the trial judge correctly overruled defendant's objection and motion to suppress.

**[6]** Defendant's seventh assignment of error is as follows:

"7. That his Honor erred in permitting the witness to state: 'He asked me if I knew a family I didn't know. I think the name was Wood', as shown by EXCEPTION NO. 8 (R p 25)."

The Solicitor asked the witness Judith Strader to tell what defendant did after she first saw him in the trailer. After testifying to the actual rape she, without further questioning, told of conversations occurring after the assault. While relating the conversation she, in part, testified:

" . . . And then I said, 'Who are you?' He said, 'If I told you, then you would know who I was,' and he asked me my name. He asked me where I was from and I told him, and he asked if I knew a family I didn't know. I think the name was Wood.

MR. DARLINGTON: Objection.

THE COURT: Overruled.

DEFENDANT'S EXCEPTION NO. 8"

Defendant seems to contend that the use of the words "I think" was a prejudicial expression of opinion.

When terms such as "I think," "my impression is" or "I believe" connote an indistinctiveness of perception or memory, they are not objectionable although they may carry little weight. 1 Stansbury's North Carolina Evidence, § 122 (Brandis Revision 1973); McCormick, on Evidence, § 10 (1954 Ed.); *State v. Haney*, 263 N.C. 816, 140 S.E. 2d 544.

Obviously, Miss Strader's use of the words "I think" indicated an unsure memory as to the family name.

Defendant, on cross-examination, testified that he worked for a man named Woods. We think at this point the evidence became relevant and competent on the question of identity since identity is provable by circumstantial evidence even when there is a direct identification by a witness. *State v. Perry*, 275 N.C. 565, 169 S.E. 2d 839.

The ground upon which defendant asserts his objection was not indicated by the question. However, defendant's counsel should have moved to strike the portion of the answer which he considered objectionable. 1 Stansbury's North Carolina Evidence, § 27 (Brandis Revision 1973); *State v. Little*, 278 N.C. 484, 180 S.E. 2d 17. Counsel did not move to strike the above-quoted testimony or the subsequent evidence that defendant had worked for a man named Woods.

It should be clearly understood that this assignment of error would not be decided adversely to defendant in this capital case because of the absence of motions to strike. Nevertheless, we think that the failure of defendant's able and experienced counsel to move that the testimony be stricken highlights his own characterization of the evidence as originally admitted as being

innocuous and our conclusion that no prejudicial error resulted because of its admission.

This assignment of error is overruled.

Defendant contends that the trial judge erred in denying his motion for judgment as of nonsuit as to the charge of first degree burglary because there was no evidence of a "breaking."

[7]   Burglary in the first degree is the breaking and entering during the nighttime of an occupied dwelling or sleeping apartment with intent to commit a felony therein. G.S. 14-51; *State v. Cox,* 281 N.C. 131, 187 S.E. 2d 785; *State v. Allen,* 279 N.C. 115, 181 S.E. 2d 453. A "breaking" is an essential element of the offense of first degree burglary. *State v. Knight,* 261 N.C. 17, 134 S.E. 2d 101; *State v. McAfee,* 247 N.C. 98, 100 S.E. 2d 249; *State v. Chambers,* 218 N.C. 442, 11 S.E. 2d 280. This Court has held that there is a sufficient "breaking" to sustain a charge of first degree burglary when a person unlocks a door with a key, *State v. Knight, supra,* or opens a closed, but not fastened window. *State v. McAfee, supra.*

Here defendant's counsel concedes that the opening of a closed door would be sufficient evidence of breaking. He argues, however, that there is no satisfactory evidence that all the doors were closed.

Upon motion for judgment as of nonsuit the evidence must be considered in the light most favorable to the State, giving the State the benefit of every reasonable inference to be drawn therefrom, and nonsuit should be denied where there is sufficient evidence direct, circumstantial or both, from which the jury could find that the offense charged has been committed and that defendant committed it. *State v. Goines,* 273 N.C. 509, 160 S.E. 2d 469; *State v. Vincent,* 278 N.C. 63, 178 S.E. 2d 608; *State v. McNeil,* 280 N.C. 159, 185 S.E. 2d 156; 3 N.C. Index 2d, Criminal Law § 105.

[8]   In this case, the prosecuting witness unequivocally testified that "before I laid down across the bed, I locked my doors. There were three." And on cross-examination she testified "I knew my doors were locked. As to my having a recollection of locking each door, I have a phobia about locking those doors . . . I can't tell if the lock has been tampered with."

In order to show a breaking it is not required that the State offer evidence of damage to a door or window. *State v. Tippett,* 270 N.C. 588, 155 S.E. 2d 269.

Conceding that the State did not offer direct evidence that the locks on the doors had been tampered with or that force had been applied to the locks, we think that there was ample evidence from which the jury could reasonably infer that there was a "breaking" within the meaning of the term as used in reference to first degree burglary.

Defendant next contends that his motion for judgment as of nonsuit as to the charge of rape was erroneously denied because there was insufficient evidence to show that prosecuting witness continued to resist until the offense was consummated.

[9, 10]   Rape is the carnal knowledge of a female person by force and against her will. *State v. Flippin,* 280 N.C. 682, 186 S.E. 2d 917; *State v. Primes,* 275 N.C. 61, 165 S.E. 2d 225; *State v. Crawford,* 260 N.C. 548, 133 S.E. 2d 232. The force necessary to constitute rape need not be actual physical force. Fear, fright or coercion may take the place of physical force. *State v. Williams,* 275 N.C. 77, 165 S.E. 2d 481; *State v. Primes, supra.* Although consent is a perfect defense to a charge of rape, there is no legal consent when it is induced by violence or threat of violence. *State v. Carter,* 265 N.C. 626, 144 S.E. 2d 826.

The prosecuting witness testified:

"When I was aroused by my dog, I saw the man standing in the doorway of my bedroom and I raised up on my arms and looked and first I felt shocked and then he lunged at me. I was struggling to get away, and I screamed two or three times, I am not sure, and I screamed and when I did he hit me with his fist in my face and bruised my upper face and forehead, my eyes, the side of my face and my lip and I kept struggling the best I knew how to get away and at this time he started choking me. He didn't say anything at all at that time. He choked me almost to the point I felt all the air and everything going out of my body, and he pushed me up in the bed and at this time he did rape me, keeping one hand at my neck part of the time and my body was penned down. My body was penned down. The defendant's private parts entered my private parts. I didn't give consent for him to have intercourse with me. I didn't give the defendant or any other person consent or permis-

sion to come into my mobile home that night. . . . I felt like if I did try to get away he was going to kill me."

**[11]** Thereafter, the State, for the purpose of corroboration, offered into evidence a statement made by the prosecuting witness to Officer James Little. This statement reiterated the violent assault upon Miss Strader and concluded with these words:

" . . . After I submitted he wasn't as rough. He must have been there at least thirty-five or forty minutes. He asked if he could come back again and I said not."

Defendant relies on the above-quoted statement to support this assignment of error.

The statement by the prosecuting witness that she "submitted" must be examined in light of all of the surrounding circumstances. Miss Strader was subjected to a violent beating. She was choked until she "felt all the air and everything going out of her body." She was then pushed onto the bed, pinned down and raped. She "was struggling to get away." Further, Miss Strader positively stated that she did not consent to have intercourse with defendant, and that even after the completion of the carnal act, she feared that he was going to kill her.

Certainly under these circumstances the prosecuting witness resisted to the extent of her abilities. We cannot imagine circumstances more conducive to such fear and coercion as would supplant physical force.

There was ample evidence of both physical force and overpowering coercion and fear to require a jury determination as to whether defendant obtained carnal knowledge of Judith Strader "forcibly and against her will."

Defendant's Assignment of Error No. 20 is as follows:

**[12]** "That his Honor erred in instructing the jury:

'the second thing the State must prove is that the building was entered by the defendant coming into the mobile home, and coming into the bedroom would be an entering.' "

Defendant apparently contends that the instruction complained of amounted to an expression of opinion by the trial judge that the State did not have to show that there was a "breaking."

The entry of a dwelling or sleeping apartment is an essential element of the crime of burglary. *State v. Cox, supra.*

Immediately prior to the instruction complained of, the trial judge charged that the State *must* prove beyond a reasonable doubt seven things, the first being that:

" . . . there was *a breaking* by the defendant. This simply means the opening or removal of anything blocking entrance, so the pushing open of a door that is latched would be a breaking. If you are satisfied beyond a reasonable doubt that *there was a break-in* of Miss Strader's mobile home that night, the State would have satisfied you of the first thing *necessary* for you to convict the defendant on this charge." (Emphasis added.)

Immediately after the instruction assigned as error, the trial judge recited five additional elements of the crime that the State must prove. In each of these charges the trial judge specifically mentioned both the elements of breaking and entering.

It is a well-recognized rule of law that the trial judge's charge must be construed contextually as a whole, and when, so construed, it presents the law of the case in such a manner as to leave no reasonable cause to believe the jury was misled or misinformed, an exception thereto will not be sustained. 7 N.C. Index 2d, Trial § 33.

We do not believe that the isolated statement here complained of was sufficient to confuse the jurors or to mislead them into believing that the State need not prove the element of "breaking" in proving the burglary charge.

[13] Defendant argues that the trial judge erroneously expressed an opinion concerning the strength of defendant's defense when he twice stated that defendant's alibi was in the form of his own testimony.

The statements complained of were made by the trial judge during the course of a full and fair charge on defendant's defense of alibi. Defendant was the sole witness for the defense and every juror had to be fully aware that his defense of alibi was supported only by defendant's testimony.

A contextual reading of the charge does not disclose that the admittedly unintentional statements here complained of

unduly highlighted the fact that only defendant's testimony supported a defense of alibi.

**[14]** Defendant assigns as error the failure of the trial judge to instruct the jury that a verdict of guilty upon either the charge of rape or upon the charge of first degree burglary would result in the imposition of a sentence of death.

During their deliberations the jury returned to the courtroom and the following exchange took place:

> "THE COURT: I understand the jury has a question?
>
> FOREMAN: Yes, sir, we would like further instructions regarding the punishment and whether or not we can make a recommendation.
>
> THE COURT: First of all, I will instruct you the penalty to be imposed is really not your concern. Your function is to pass on the guilt or not guilt as to both counts. So, I will not instruct you on what the penalty will be, that is not a concern of yours. As far as the recommendation is concerned, you cannot make a recommendation. You find him guilty or not guilty according to the evidence and the instructions I have given you."

In criminal cases the general rule is that the trial judge has the sole responsibility to render judgments upon jury verdicts within the limits prescribed by statute. The sole responsibility of the jury is to decide the guilt or innocence of the accused without being hindered by the *quantum* of punishment possible, probable or certain upon conviction. *State v. Davis,* 238 N.C. 252, 77 S.E. 2d 630; *State v. Howard,* 222 N.C. 291, 22 S.E. 2d 917. Formerly, there was an exception to this general rule in reference to capital cases pursuant to the proviso in G.S. 14-21. This proviso permitted the jury in capital cases to recommend at the time that it rendered a verdict of guilty in open court that the punishment should be life imprisonment. Since our decision in *State v. Waddell,* 282 N.C. 431, 194 S.E. 2d 19, decided 18 January 1973, the jury no longer has the discretion to recommend, and thereby fix the punishment for rape, arson, burglary in the first degree or murder in the first degree at life imprisonment. In *Waddell,* we said: "The punishment to be imposed for these capital felonies is no longer a discretionary question for the jury and therefore no longer a proper subject for an instruction by the judge." See also *State v. Washington,* 283 N.C.

175, 195 S.E. 2d 534; *State v. Dillard, post,* 72, 203 S.E. 2d 6.

The offense in instant case was committed subsequent to 18 January 1973. We hold that the trial judge properly refused to instruct the jury as to the punishment which would result from a conviction of rape or first degree burglary.

[15]  Defendant argues that he was denied a fair trial because the investigating officers failed to (1) present evidence of a microscopic comparison of a blond hair found on his clothing with a hair taken from the prosecuting witness' head and (2) make a laboratory comparison of defendant's blood and the blood found on the bed clothing belong to prosecuting witness.

In the recent case of *State v. Noell,* 284 N.C. 670, 202 S.E. 2d 750, Justice Moore, speaking for the Court stated:

> "Police officers are under no duty to take any particular course of action when investigating a crime. Of course, they cannot suppress evidence. *Brady v. Maryland,* 373 U.S. 83, 10 L.Ed. 2d 215, 83 S.Ct. 1194 (1963). They are not required, however, to follow all investigative leads and to secure every possible bit of evidence, and their failure to do so is not prejudicial error. In *People v. Baber,* 31 Mich. App. 106, 187 N.W. 2d 508 (1971), the failure of the police to check footprints in the snow, to test a gun found at the scene of the crime for fingerprints, to check a broken window and screen for fibers of clothing, or otherwise take fingerprints in the house was held not to give rise to a valid claim of a constiutional denial of due process."

Since this assignment of error is related to the identification of defendant as the assailant, it must be borne in mind that there was other strong evidence identifying defendant as the person who committed the crimes. Further, the record does not disclose that counsel sought to have the tests performed, that he requested the State to conduct these tests, or that he sought to suppress evidence of the blond hair or the blood stains at trial. Neither is there any indication that the officers or the prosecutor sought to suppress evidence favorable to defendant. In any event, defendant has failed to show prejudice since we have no way of knowing what the tests might have disclosed.

We find no prejudicial error in the failure of the officers to pursue these particular investigative procedures.

[16] Defendant contends that the trial judge erred by failing to instruct the jury that if a door to the mobile home was open in the slightest degree, entering the trailer through that door would not be a breaking.

The trial judge in a criminal action is required to declare and explain the law arising on the evidence given in the case, and it is error to instruct on law which does not arise on the evidence. G.S. 1-180; *White v. Cothran*, 260 N.C. 510, 133 S.E. 2d 132.

The record reveals no testimony which indicates that any door of the mobile home was open at the time defendant entered the trailer. Rather the uncontroverted evidence is that all three doors were locked prior to defendant's entry. Therefore, it was not error for the trial judge to fail to instruct the jury that if the door were open the slightest degree, entering through that door would not be a breaking.

[17] As a part of this assignment of error, defendant argues that the trial judge erred by charging that a breaking " . . . simply means the opening or removal of anything blocking entrance, so the pushing open of a door that is latched would be a breaking."

The trial judge in other portions of the charge correctly instructed on the law of breaking as related to first degree burglary and the uncontroverted evidence shows that all the doors were locked.

Although we do not approve the language used by the trial judge in this portion of the charge, we do not believe that the jury was misled by this single statement.

This assignment of error is overruled.

[18] By Assignments of Error Numbers 32 and 33, defendant objects to the court's failure to submit to the jury the lesser included offenses of rape—assault with intent to commit rape and assault on a female.

The necessity for instructing a jury as to an included crime of lesser degree than the one charged arises only when there is evidence to support the included crime of lesser degree. *State v. Watson*, 283 N.C. 383, 196 S.E. 2d 212; *State v. Bryant*, 280 N.C. 551, 187 S.E. 2d 111; *State v. Carnes*, 279 N.C. 549, 184

S.E. 2d 235; *State v. Murry*, 277 N.C. 197, 176 S.E. 2d 738; and *State v. McNeil, supra.*

Here, all the evidence shows a completed act of intercourse. Defendant's defense was alibi. There was no evidence to support either of the lesser included offenses.

The trial judge did not err by failing to instruct the jury on the charge of assault with intent to commit rape or upon the crime of assault upon a female.

Defendant, without assignment of error, argues in his Brief that the lesser included offenses of burglary should have been submitted to the jury. This argument must fail by virtue of the same authorities and reasoning upon which we overruled Assignments of Error 32 and 33.

By Assignments of Error 26 and 27, defendant contends that the trial judge failed to correctly charge on intent to commit rape, as it related to the charge of first degree burglary.

[19] He first argues that the trial judge did not instruct the jury that defendant must have had an intent to gratify his passions notwithstanding any resistance on the part of the prosecuting witness.

In this connection the trial judge, in part, charged:

"The sixth thing that the State must prove and prove beyond a reasonable doubt before you can convict the defendant of first degree burglary is that at the time of the breaking and entering, the defendant intended to commit rape.

If you are satisfied from the evidence and beyond a reasonable doubt that at the time the defendant broke and entered this mobile home that he intended to rape Miss Strader then the State would have satisfied you of the sixth thing necessary for you to convict the defendant of first degree burglary.

\*      \*      \*

"Now, I charge you as to the rape. Rape is the forcible sexual intercourse with a female person against her will.

I charge you for you to find the defendant guilty of rape, the State must prove three things beyond a reasonable doubt.

First, that the defendant had sexual intercourse with Miss Strader.

Second, that the defendant used or threatened to use force sufficient to overcome any resistance that she might make, and

Third, the State must prove and prove beyond a reasonable doubt that Miss Strader did not consent to the sexual intercourse and it was against her will."

We think under the circumstances of this case, that the charge on the "intent to commit rape" was adequate. This is particularly so since the record evidence shows that the intent was, in fact, *executed* in connection with a brutal assault.

[20]　Defendant further argues that the Judge should have instructed the jury that if defendant entered the prosecutrix's bedroom without intent to use force but only formed the intent to accomplish his purpose by force after she screamed, they could return a verdict of guilty of the lesser included offense of non-burglarous breaking and entering.

There was no evidence to support this instruction. *State v. Watson, supra; State v. Bryant, supra; State v. Carnes, supra.*

Further the instruction which defendant claims was erroneously omitted is in the nature of a contention. The instruction was not requested by defendant's counsel and if given, would have run counter to his sole defense of alibi.

These assignments of error are overruled.

[21]　Defendant also contends that the instructions on the charge of rape were erroneous in that they did not sufficiently describe the required degree of resistance and relate it to the facts of this case.

In the case of *State v. Vicks,* 223 N.C. 384, 26 S.E. 2d 873, Judge Bone charged the jury as follows:

" . . . if the State has, by evidence, satisfied the jury beyond a reasonable doubt that this defendant had carnal knowledge or sexual intercourse, the two terms being synonymous, with the prosecutrix, and that he accomplished it by force and violence, and against her will, it would be your duty to return a verdict of guilty of rape, as charged in the bill of indictment. . . . "

Finding no error in the charge, this Court stated:

"When the whole charge is considered contextually it is definite and leaves the jury no option to convict the defendant of rape if the evidence failed to satisfy them beyond a reasonable doubt of each of the essential elements of the offense. . . . "

In addition to the definition of rape quoted in the preceding assignment of error, Judge Webb in his mandate to the jury on the rape charge stated:

"I charge you if you find from the evidence and beyond a reasonable doubt that on or about June 18, 1973, the defendant Alton James Henderson by the use of force or threat of force had sexual intercourse with Judy Ann Strader without her consent and against her will, it would be your duty to return a verdict of guilty of rape. If you do not so find or have a reasonable doubt as to one or more of these things, you will find the defendant not guilty of rape."

We think that the instruction on the charge of rape was correct and was given in a manner calculated to aid the jury in understanding the case and in reaching a correct verdict.

[22] Defendant objects to the trial judge's failure to include in his charge certain evidence which defense counsel elicited on cross-examination.

Defendant points to the following omitted matters which he claims favored defendant, to wit:

"1. That she is nearsighted and needs glasses. That she was not wearing glasses when her attacker was standing in the doorway. (R p 28)

2. That the prosecuting witness had to look at Alton Henderson in police custody for five minutes before she was able to recognize him. (R p 30)

3. That the prosecuting witness did not notice the next day that any injury was done to the door or the locks. (R p 32)

4. That she was unable to recognize the color of the shirt of the man attacking her. (R pp 32-33)

5. That the prosecuting witness had made an earlier statement inconsistent with her statement that she was knocked out of the bed. (R p 42)"

The general rule is that objections to the charge in stating contentions of the parties or in recapitulating the evidence must be called to the court's attention in apt time to afford opportunity for correction. However, this rule does not apply where contentions are given by the Judge which are based on unintroduced evidence, which erroneously recite defendant's testimony, or which misstate the burden of proof to defendant's prejudice. See 3 N. C. Index 2d, Criminal Law § 163, and cases there cited.

The matters of which defendant complains are within the general rule requiring counsel to bring their omission to the court's attention. It should also be noted that the record reveals that at the time prosecuting witness stated she was nearsighted, she also stated, "I know I see very well close with my glasses off, with the glasses off I do not see distances." The other more compelling omission concerning the length of time that she observed defendant at the confrontation at the Sheriff's Department was explained in the following manner:

"A. Sir, I knew the moment I saw him that he was, but I stood there and looked because I knew how important it was, and I wanted to make very sure in my own mind if that was the man."

Whether prosecuting witness recognized the color of her assailant's shirt, noticed the damage to her locks or made an inconsistent statement concerning being knocked off the bed by her assailant do not appear to be of crucial importance to defendant's defense.

Certainly a contextual reading of the entire charge fails to show that the charge was weighted in favor of the State or that the omission of the matters here complained of amounted to an expression of opinion by the trial judge in violation of G.S. 1-180.

This assignment of error is overruled.

[23] Finally, defendant contends that the death sentence was illegally imposed and that it constituted cruel and unusual punishment prohibited by the Eighth and Fourteenth Amendments to the United States Constitution.

---

In *State v. Waddell, supra,* this Court declared that upon conviction, the death penalty would be imposed upon any person who committed the crimes of burglary in the first degree, first degree murder, arson or rape after 18 January 1973. On 25 February 1974, this Court decided the case of *State v. Jarrette,* 284 N.C. 625, 202 S.E. 2d 721. In *Jarrette* the Court reaffirmed the holding in *Waddell* and answered all the viable contentions presented by defendant's brief and argument concerning the death penalty. See also *State v. Dillard, supra,* and *State v. Noell, supra.*

We have again carefully considered all of the arguments which were forcefully presented by defendant's counsel. However, we do not find them sufficiently persuasive to warrant disturbing the holdings in *Waddell* and *Jarrette.*

Because of the imposition of the death penalty in this case, we have carefully examined the entire record and every contention and argument proffered by defendant. Our examination discloses that defendant received a fair trial, free from prejudicial error.

No error.

Chief Justice BOBBITT, Justice HIGGINS and Justice SHARP dissent as to death sentence and vote to remand for imposition of a sentence of life imprisonment for the reasons stated in the dissenting opinion of Chief Justice Bobbitt in *State v. Jarrette,* 284 N.C. 625, 666, 202 S.E. 2d 721, 747 (1974).