State v. Henderson

STATE OF NORTH CAROLINA v. RAYMOND LEWIS HENDERSON AND JAMES MONROE HUNTLEY

No. 7526SC455

(Filed 19 November 1975)

1. Criminal Law § 66— in-court identifications — observation at crime scene as basis

Evidence was sufficient to support the trial court's finding that two witnesses' in-court identifications of defendants stemmed from reliable observations independent of allegedly suggestive pretrial identification confrontations where such evidence tended to show that one witness, who was the victim of the armed robbery, observed first one defendant and then the other when they entered at different times the store at which she was cashier, and the other witness, a police officer who was cruising the vicinity, observed one defendant as he ran in front of the officer's car and the other defendant as his car approached from the opposite direction and stopped directly next to the police car.

2. Criminal Law § 66— voir dire on identification testimony — limitation of cross-examination proper

The trial court did not err in limiting the defense attorney's cross-examination of a prosecution witness on voir dire to determine admissibility of her in-court identification of defendant where such cross-examination dealt with the witness's expectations preceding a showup which took place shortly after the robbery, and whether such information was important was a discretionary matter for the trial court.

3. Criminal Law § 66— voir dire on identification testimony — limitation of questioning proper

The trial court did not err in ordering defense counsel to cease a line of questioning on voir dire where pursuit of the questioning would have added nothing to testimony already given by the witness.

State v. Henderson

4. **Criminal Law § 88— witness's contact with Negroes — cross-examination improper**

The trial court did not err in refusing to allow defense counsel to question an armed robbery victim at trial about the extent of her social contact with members of the Negro race.

5. **Criminal Law § 42— items taken from store — pistol — admissibility in armed robbery case**

The trial court in an armed robbery prosecution did not err in allowing into evidence a bottle of Andre Cold Duck, a pack of Kool cigarettes, and a pistol which were identified by the robbery victim as the "same or similar" to those taken from the store or used during the robbery.

APPEAL by defendants from *Thornburg, Judge.* Judgments entered 6 February 1975 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 18 September 1975.

Defendants were each charged, in separate bills of indictment, with the felony of armed robbery. The cases were consolidated for trial. A jury found the defendants guilty as charged, and both defendants appeal.

The State's evidence tends to show the following: On 11 July 1974 from 3:00 p.m. until 11:00 p.m., Vicki Chandler Smith was employed as the cashier of the Seven-Eleven Store at 1746 Camp Green Street in Charlotte, North Carolina. Sometime between 8:00 p.m. and 9:00 p.m. defendant Henderson made a small purchase at the store. He was wearing a T-shirt with a picture and the word "streaking" inscribed on the front. At 10:20 p.m. defendant Huntley entered the store. No other customers were in the store at this time. Huntley brought a bottle of Andre Cold Duck to the checkout counter and asked Miss Smith for a pack of Kool cigarettes. After these items had been "rung up" and placed in a bag, Huntley reached under his shirt and pulled out a small handgun. He told Miss Smith "this is a holdup" and demanded the money in the register. While she took out the five and one dollar bills, Huntley reached over the counter and grabbed the ten dollar bills. After the money had been placed in the bag with the cigarettes and Cold Duck, Huntley ordered Miss Smith to lie with her face down on the floor behind the counter as he fled. She remained on the floor until some customers came into the store two or three minutes later.

At approximately 10:30 p.m. Jeff Ensminger, a police officer with the Charlotte Police Department, was driving a patrol

car in the vicinity of the Seven-Eleven Store. As he turned right from Camp Green Street onto Royston Road, Huntley darted from a wooded area on the right, which separates the Seven-Eleven Store from Royston Road. Officer Ensminger slammed on the brakes to avoid hitting Huntley, who was carrying a brown paper bag and an unidentifiable object. At the same time a gold Plymouth Duster facing the opposite direction pulled up next to the police car. It was driven by Henderson. Huntley went behind the Duster, paused to stare at the police car momentarily, and got into the front seat with Henderson. The defendants drove 30 feet to the intersection of Camp Green Street and Royston Road, turned right, and sped off. Ensminger observed the license number of the vehicle. At approximately 10:35 p.m. Officers J. M. Harrill and Frank McKinney observed the gold Plymouth Duster drive into a parking lot at the Aloha Apartments. As the defendants got out of the car, Huntley was not wearing a shirt and was carrying a small brown paper bag which appeared to have a bottle sticking out the top. Huntley walked to a dark area under the stairs, while the defendant Henderson went upstairs to an apartment. Both men were placed under arrest when they returned to the car in the parking lot. The officers found the paper bag under the stairs; it contained a bottle of Andre Cold Duck, a pack of cigarettes, and a pistol. The defendants were promptly taken back to the Seven-Eleven Store, where Miss Smith identified Huntley as the robber. Miss Smith also recognized Henderson, the other suspect, as the same person who had come into the store earlier in the evening, but she did not mention this to police at the time of the showup at the Seven-Eleven Store because she was not asked about Henderson. Miss Smith identified Huntley again at a preliminary hearing. Later that night a search of defendant Huntley produced a ten dollar bill with the same serial number as the one Miss Smith had recorded at the Seven-Eleven Store.

Defendant Henderson offered evidence tending to show that he did not participate in the robbery and did not know Huntley had committed a robbery before he drove him to the Aloha Apartments. Defendant Huntley offered no evidence. Both defendants were found guilty of armed robbery. Defendant Henderson was sentenced to a prison term of not less than 10 nor more than 12 years. Defendant Huntley was sentenced to a prison term of not less than 20 nor more than 25 years.

State v. Henderson

*Attorney General Edmisten, by Assistant Attorney General Charles M. Hensey, for the State.*

*George S. Daly, Jr., attorney for the defendant-appellant, Raymond Lewis Henderson.*

*Hugh J. Beard, Jr., attorney for the defendant-appellant, James Monroe Huntley.*

BROCK, Chief Judge.

[1] Both defendants assign as error the admission of in-court identifications by prosecution witnesses Smith and Ensminger, which they contend were tainted by impermissibly suggestive identification procedures before trial.

Defendant Huntley argues that Miss Smith's in-court identification of him as the person who robbed the Seven-Eleven Store was fatally marred by two pretrial identification confrontations: the showup in the Seven-Eleven parking lot immediately following the robbery, and the preliminary hearing. Furthermore, defendant Huntley contends that Officer Ensminger's in-court identification of him was tainted by the same showup.

Defendant Henderson argues that Miss Smith's identification of him as a customer of the store on the evening of the robbery and Officer Ensminger's identification of him as the driver of the gold Plymouth Duster should have been excluded from the trial because of the alleged suggestive pretrial confrontations.

It is well established that pretrial identification procedures which are so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification are unconstitutional. However, alleged impermissibly suggestive pretrial confrontations do not affect the admissibility of the in-court identification if the in-court identification is determined to be of independent origin. Appellants' attack upon the in-court identifications of defendants by witnesses Smith and Ensminger raises the question of whether the in-court identifications were properly found by the trial court to be of independent and reliable origin. *State v. Henderson,* 285 N.C. 1, 203 S.E. 2d 10 (1974).

There is an abundance of evidence to support the trial judge's finding that the witnesses' in-court identifications of

the defendants were of an independent and reliable origin. Miss Smith specifically remembered defendant Henderson because of his "streaking shirt." According to her testimony on *voir dire:*

> "When Henderson came in, I guess it was between 8:00 and 9:00 o'clock that same night, I had about four customers in a line and I was there by myself. The reason I noticed that Henderson had on a streaking shirt was that he was standing at the candy counter and I figured he might swipe a bar of candy or something. I checked out those customers, and he bought some merchandise and I checked him out, and he left and I didn't see him no more until they brought him up that night. I would say I observed him from four to five minutes while he was in the store that night."

Similarly, it is clear from the circumstances of the robbery that Miss Smith's exposure to defendant Huntley was more than adequate to insure an accurate identification at trial.

Although Officer Ensminger's first encounter with the defendants occurred under rather unusual circumstances and during a relatively brief period of time, the evidence reveals that he had an adequate opportunity to observe defendants and accurately identify them at trial. When defendant Huntley ran in front of the police car, Officer Ensminger saw his face and noticed that he was wearing a tan, Army-type khaki shirt and carrying a brown paper bag and an object. Officer Ensminger testified on *voir dire:* "Mr. Huntley stopped at the rear of Mr. Henderson's car, looked directly at the police car, then got into the passenger's side of Mr. Henderson's car." Defendant Henderson first came into view as the gold Plymouth Duster approached slowly from the opposite direction and stopped directly next to the police vehicle. Henderson was driving. Officer Ensminger testified:

> "Mr. Henderson was wearing a light color, I believe it was white, T-shirt, had 'Keep on Streakin'' on it. He had a small goatee and mustache. He was driving a gold Plymouth Duster. There was a street light right there at the corner of Camp Green and Royston Road. I would say I was two feet from Raymond Henderson when I saw him. I was able to clearly see his face. I don't have any trouble with my vision. Last time it was checked it was twenty-twenty."

Clearly there is sufficient evidence to support the trial judge's finding that the in-court identifications of defendants stemmed from reliable observations independent of the alleged suggestive pretrial identification confrontations.

[2]  Defendant Huntley's assignments of error Nos. 1, 2, and 5 attack the restrictions imposed by the trial judge on defense attorney's cross-examination of Miss Smith on *voir dire* and during trial. At the *voir dire* hearing to assess the admissibility of Miss Smith's in-court identification of defendant Huntley, Huntley's counsel asked Miss Smith the following question: "Did you think when you went out they had picked up people they did not think had robbed you?" When objection to this question was sustained, he tried again: "When they told you to go out there what did you think?" Objection to this question was also sustained. Huntley argues that the court's rulings in these two instances were erroneous due to the importance of the witness's expectations immediately prior to the identification in determining whether the showup was improperly suggestive.

We find this argument unpersuasive in view of the total context of the cross-examination. The witness had already stated three times in response to continuous questioning by Huntley's attorney that the police said, "Go out and see if any one of the guys robbed you." By this time it was abundantly clear what Miss Smith remembered being told by police before the showup, and defense counsel's probe for evidence of improper suggestions by police had proven barren. Furthermore, while a witness's expectations may have some bearing on his or her susceptibility to suggestive circumstances and the ultimate risk of mistaken identification, it is not a critical factor as defendant Huntley concedes in his brief. Whether such information is important to a *voir dire* of this nature falls within the discretion of the trial judge. In this case there is no evidence of abuse by the trial judge in excluding the two questions by defense counsel on cross-examination.

[3]  Defendant Huntley's assignment of error No. 3 pertains to the trial court's order to discontinue another line of questioning during the same *voir dire* hearing. Defense counsel asked Miss Smith what she said at the preliminary hearing. She testified that she was afraid she might not be able to identify defendant Huntley at the preliminary hearing because "he had done something to the top of his head and the sides

were shorter and he had shaved off his mustache." After testifying that she did not say anything to the district attorney about defendant Huntley before the preliminary hearing, she stated:

> "I didn't say to the Solicitor that I couldn't recognize him. The Judge said 'We have no doubt that a guy robbed you, but is this the guy?' As you remember I hesitated. I looked at the guy very carefully. I said 'Yes, that's the one that robbed me.' Immediately before the preliminary hearing started, I said to the District Attorney that I could recognize him."

At this juncture the court ordered defense counsel to cease the line of questioning. Defendant argues that the court's refusal to allow further questioning to develop the apparent discrepancy in Miss Smith's testimony about what she said to the district attorney before the hearing was error. We disagree. The witness's previous testimony fully disclosed the doubts and uncertainty she had about her ability to identify the defendant at the hearing. Consequently, whether the witness told the district attorney she could or could not identify the defendant before the hearing was superfluous; pursuit of this line of questioning would have added nothing to the candid admission of doubt by the witness in preceding testimony. Defendant Huntley's third assignment of error is overruled.

[4] Defendant's assignment of error No. 11 concerns defense counsel's attempt to question witness Smith at trial about the extent of her social contact with members of the Negro race. The court sustained objection to this question. Defendant argues that the extent of the witness's contact with Negroes is indicative of her ability to identify and distinguish one Negro from another. We find no merit in this argument. This assignment of error is overruled.

[5] Defendant Huntley's final assignment of error pertains to the admissibility of State Exhibits 2, 3, and 4—a bottle of Andre Cold Duck, a pack of Kool cigarettes, and a pistol, respectively—upon being identified by Miss Smith as the "same or similar" to those taken from the store or used during the robbery. In *State v. Simmons*, 286 N.C. 681, 213 S.E. 2d 280 (1975), the Supreme Court reaffirmed the general rule in this jurisdiction that weapons may be admitted into evidence provided there is evidence tending to show that they were used in

the commission of a crime. The same principle applies to other articles or objects used in connection with the commission of a crime. Any conceivable error resulting from the admission of these objects into evidence was cured by Officer Harrill's subsequent identification of the objects as those which were found at the Aloha Village Apartments where defendants Huntley and Henderson were arrested on the night of the robbery.

In our opinion defendants received a fair trial free from prejudicial error.

No error.

Judges VAUGHN and MARTIN concur.