STATE OF NORTH CAROLINA v. CALLOWAY HEARD AND
RONALD EXCELL JONES

No. 61

(Filed 10 April 1974)

1. Criminal Law § 169— constitutional error — determination of harm-
lessness

In determining whether a Federal Constitutional error is prej-
udicial, the question is whether there is a reasonable possibility that
the evidence complained of might have contributed to the conviction,
and a court, before it can find a Constitutional error harmless, must
be able to declare a belief that such error was harmless beyond a rea-
sonable doubt.

2. Criminal Law §§ 95, 169— consolidated trials — confession of non-
testifying codefendant — prejudicial error

In the consolidated trial of two defendants for armed robbery,
the trial court's error in allowing into evidence the confession of a
nontestifying codefendant was not harmless beyond a reasonable doubt
where defendant testified that he was present at the crime scene but
strongly denied any part in the planning or execution of the robbery,
the codefendant's erroneously admitted confession unequivocally impli-
cated defendant in the planning and execution of the robbery, and,
upon their arrest shortly after the robbery, defendant had no weapon
in his possession but the nontestifying codefendant had two pistols in
his pocket.

APPEAL by defendant, Ronald Excell Jones, pursuant to G.S.
7A-30(1), from decision of the Court of Appeals reported in
20 N.C. App. 124, 201 S.E. 2d 58, finding no error in the trial
before *Blount, S.J.,* 23 April 1973 Session of CRAVEN Superior
Court.

Defendants Calloway Heard and Ronald Excell Jones were
charged in separate bills of indictment with armed robbery. The
cases were consolidated for trial over objection of defendant
Heard. Both defendants entered pleas of not guilty.

The State's evidence, except when quoted, may be sum-
marized as follows: Jesse Wilson testified that on 9 February
1973 between 10:00 a.m. and noon, Ronald Excell Jones (Jones)
and Calloway Heard (Heard), in company with three other men
came into his store, which was located in Craven County near
the town of Vanceboro. They shot pool, and Jones purchased
and ate a sandwich. On the same day at about 2:00 p.m., while

Mr. John Thomas Mumford was in the store, defendants Jones and Heard returned. Mr. Wilson related:

" . . . I raised my head up when they walked in the door expecting them to call for a drink or something, and that one with no coat on throwed a gun in my face and shot me with a blank right in my face, and I don't know if he was drunk or what, and I jumped back and I said, 'What in the world ails you, what do you mean?' And at that time neither one of them had said a word. He was around there on me, and he shot me in the face again and said it was a hold-up and Jones about that time shot Mr. Mumford in the face and told him to stand over there and chunk his pocketbook on the drink box. He started beating me over the head."

Heard took Mr. Wilson's pocketbook, which contained between eight or ten dollars, from his person. Heard and Jones then fled. Police were called, and one of the officers took Mr. Wilson to the hospital where approximately twenty stitches were taken to close wounds in his head.

On cross-examination, Mr. Wilson stated:

" . . . the second time he shot me, Mr. Jones shot Mr. Mumford at the same time. Sure my eyes were burning, then, he had done shot me once. They were watering. If someone would shoot you in the face, you couldn't help but throw your hands up. I was backing away; I jumped backwards when he shot me the first time and said, 'What in the world ails you, what do you mean?' And at that time he was around the box and he was shooting Mr. Mumford. I was backing away as fast as I could, my eyes were burning, my eyes were watering, and I had thrown one or both hands up to my face, and I still saw Mr. Jones."

Deputy Sheriff E. E. Rowe, of the Craven County Sheriff's Department, testified that on 9 February 1973, shortly after 2:00 p.m., he went to the area of Mr. Wilson's store after receiving a radio call concerning an alleged robbery at the store. He was accompanied by Deputy Sheriff Pritchard and they were looking for "two colored males, medium build; one was supposed to be dressed in a gray sweater, pullover type; one with a light brown coat . . . . " Shortly after reaching the area, they observed defendants walking along the road about a mile and a half from

Mr. Wilson's store. He observed a red substance about Heard's wrist. At that time, Heard was wearing a brown coat and Jones was wearing a gray sweater. A .22 caliber blank pistol which would expel blanks or gas, a .22 caliber pistol containing six unfired bullets and eight dollars were found on Heard's person. No weapons were found on Jones. Jones and Heard were arrested and carried to the courthouse in New Bern.

Both Heard and Jones made statements to the officers after they had been advised of their rights and had signed waivers of rights. When the State offered these statements, counsel objected. Judge Blount allowed Deputy Sheriff Rowe to testify concerning both statements. Prior to admitting this testimony, Judge Blount instructed the jury that the testimony relating to the statement made by Heard was to be considered only as to defendant Heard and not as to defendant Jones. A like instruction was given to the effect that the statement made by Jones was to be considered only as to defendant Jones and not as to defendant Heard.

According to Deputy Rowe, Heard stated that he went to Wilson's store for the purpose of robbing the store; that he used the gas gun and hit Mr. Wilson on the head three or four times with a Pepsi-Cola bottle. He, at that time, took Mr. Wilson's wallet from his pocket. He further stated that he and two other men went to the store and that *all of them knew what they were going there for and what they were going to do after they got there.*

Deputy Rowe further testified that Jones admitted going to Wilson's store and saying, "Let's get out of here." They went to the store in his Plymouth automobile and the only thing that was said about money was that, "they had to have some money to get back to Alabama just before we got to the store."

John Thomas Mumford testified that he was in the store when Jones and Heard came in at around 2:00 p.m. He heard someone say, "This is a stickup," and when he looked up, he was shot in the eye with something. He said that the man who had the pistol on him had on a gray slipover sweater and that the man told him to keep his back turned. On cross-examination, Mr. Mumford stated:

" . . . I do not know if I was shot with the same gun Mr. Wilson was, and I do not know if I was shot before he was.

I heard three or four different shots and then I heard the man say, 'This is a stick-up.' My eyes stung and even though I had glasses on I had to close them; and, when he told me to keep my back turned, I kept my back turned. I had my back to the man closest to me, and I couldn't say who he was. I don't know if the man in the gray sweater was the one behind me, but I saw a gray sweater when I first raised up. I don't know if the man who was doing the shooting had on a gray sweater or not. . . . "

At the close of the State's evidence, defendants each moved for judgment as of nonsuit. The motions were denied.

Defendant Jones, testifying in his own behalf, stated that he was a resident of Grifton, North Carolina. On 9 February 1973 he, Heard, and his brother-in-law Chester Atkinson, a resident of the State of Alabama, drove to Winton, North Carolina, in his automobile. After purchasing some whiskey and beer, they proceeded to Williamston where he allowed Atkinson to drive. They were drinking intoxicants as they traveled. His back was hurting so he took a pill and lay down in the back seat. He remembered hearing Atkinson and Heard mention needing some money, but nothing was said about a robbery. They drove up to Mr. Wilson's store and he went in to get some cigarettes. Heard also went in the store, and shortly after they entered the store a gas gun went off causing a stinging in his eyes. He saw Heard beating Mr. Wilson and he (Jones) said, "Man let's get away from here." He had no weapon, did not hit anyone, and knew nothing about a planned robbery. Upon leaving the store, he saw that Atkinson and his car were gone. He walked away from the store and was later joined by Heard. They were picked up by officers and carried to the courthouse in New Bern. He and Heard had not been in Mr. Wilson's store on the morning of 9 February 1973.

Defendant Heard offered no evidence.

The jury returned verdicts of guilty of armed robbery as to both Jones and Heard. Each defendant appealed from judgment imposing prison sentences of not less than twenty-five nor more than thirty years. The Court of Appeals found no error in the trial below.

Each defendant petitioned for writ of certiorari to the North Carolina Court of Appeals to review its decision. We denied these petitions on 5 February 1974. Defendant Jones ap-

pealed pursuant to G.S. 7A-30(1). The Attorney General moved to dismiss this appeal and we denied his Motion on 5 February 1974.

*Attorney General Robert Morgan by Assistant Attorney General Walter E. Ricks III for the State.*

*Ward, Tucker, Ward & Smith by Michael P. Flanagan and C. H. Pope, Jr., for defendant appellant Ronald Excell Jones.*

BRANCH, Justice.

Defendant Jones contends that the trial judge erred by admitting into evidence the confession of his codefendant Calloway Heard who did not testify at their trial.

Defendant particularly points to that portion of Heard's confession which stated: "That he and two other men went to the store; that all of them knew what they were going there for and what they were going to do after they got there, and he and two other persons stated and agreed that if they got caught they would not tell on the other."

Prior to the decision in *Bruton v. United States,* 391 U.S. 123, 20 L.Ed. 2d 476, 88 S.Ct. 1620 (decided 20 May 1968), it was the federal and North Carolina rule that the admission of the extra-judicial confession of one codefendant which implicated another codefendant against whom it was inadmissible was not error when the trial judge instructed the jury that it was admissible only against the confessor and must not be considered against another.

In *Bruton,* the United States Supreme Court held that an accused's Constitutional right of cross-examination is violated at his joint trial with a codefendant who does not testify, when the Court admits the codefendant's confession inculpating the accused, notwithstanding jury instructions that the confession must be disregarded in determining the accused's guilt or innocence.

Recognizing the binding effect of the decision in *Bruton* on this Court, Justice Sharp, speaking of the Court in *State v. Fox,* 274 N.C. 277, 163 S.E. 2d 492, stated the rule that is now the recognized law in this jurisdiction, to wit:

" . . . in joint trials of defendants it is necessary to exclude extrajudicial confessions unless all portions which implicate

State v. Heard and Jones

defendants other than the declarant can be deleted without prejudice either to the State or the declarant. If such deletion is not possible, the State must choose between relinquishing the confession or trying the defendants separately. The foregoing pronouncement presupposes (1) that the confession is inadmissible as to the codefendant (see *State v. Bryant,* [250 N.C. 113, 108 S.E. 2d 128]), and (2) that the declarant will not take the stand. If the declarant can be cross-examined, a codefendant has been accorded his right to confrontation. See *State v. Kerley,* [246 N.C. 157], at 160, [97 S.E. 2d 876], at 879."

In instant case, the Court of Appeals adhered to the rule stated in *Bruton* and *Fox* and correctly found that the trial judge erred when he admitted the confession of the codefendant Heard, who did not testify and who was not subjected to a cross-examination. The Court of Appeals, however, held the admission of this evidence to be "harmless error."

We must now decide whether the admission of this evidence complained of was, in fact, harmless error.

[1] We recognize that all Federal Constitutional errors are not prejudicial, and under the facts of a particular case, they may be determined to be harmless, so as not to require an automatic reversal upon conviction. The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction. Nevertheless, before a court can find a Constitutional error to be harmless it must be able to declare a belief that such error was harmless beyond a reasonable doubt. *Schneble v. Florida,* 405 U.S. 427, 31 L.Ed. 2d 340, 92 S.Ct. 1056; *Harrington v. California,* 395 U.S. 250, 23 L.Ed. 2d 284, 89 S.Ct. 1726; *Chapman v. California,* 386 U.S. 18, 17 L.Ed. 2d 705, 87 S.Ct. 824; *Fahy v. Connecticut,* 375 U.S. 85, 11 L.Ed. 2d 171, 84 S.Ct. 229; *State v. Cox* and *State v. Ward* and *State v. Gary,* 281 N.C. 275, 188 S.E. 2d 356; *State v. Jones,* 280 N.C. 322, 185 S.E. 2d 858; *State v. Swaney,* 277 N.C. 602, 178 S.E. 2d 399; *State v. Brinson,* 277 N.C. 286, 177 S.E. 2d 398.

The State relies heavily on *Harrington v. California, supra.* In *Harrington,* the defendants were jointly tried upon charges of first degree murder and attempted robbery. Three of the defendants confessed and their confessions were offered into evidence. Only one of the confessing defendants took the stand so as to be subjected to cross-examination. The confessions of the two codefendants who did not testify were admitted into evidence.

State v. Heard and Jones

These confessions placed defendant Harrington at the scene of the crime, but did not place a gun in his hand. Harrington also made a statement which was offered into evidence in which he admitted being at the scene of the crime, but denied that he had a gun, or that he took any part in the crime. There was testimony by other persons which placed Harrington at the scene, with a gun in his hand actively participating in the crime. Harrington was convicted of murder. The United States Supreme Court affirmed and, *inter alia,* held that the admission of the confessions of the two codefendants who did not testify was "harmless error beyond a reasonable doubt" because of the other overwhelming evidence against Harrington.

*Harrington* is distinguishable from instant case. In *Harrington* one of the codefendants testified in court and placed the defendant at the scene with a gun in his hand at the time of the murder. Other persons testified that he was at the scene with a gun and was an active participant in the crimes. The challenged confessions placed him at the scene but did not place a gun in his hands. Harrington, by his own statement, admitted he was at she scene without a gun. Thus in *Harrington* the challenged confessions did not contradict defendant's statement or conflict with the theory of his defense.

[2] In instant case, the credibility of the testimony of the witnesses Mumford and Wilson was seriously impaired by cross-examination. Defendant, although admitting that he was present at the scene of the crime, strongly denied any part in the planning or execution of the robbery. The erroneously admitted statement of his codefendant Heard unequivocally implicated defendant Jones in the planning and execution of the robbery. When defendant Jones was arrested shortly after the robbery he did not have a weapon in his possession. Defendant Heard had two pistols in his pocket at the time of the arrest.

Under the facts of this case, we are of the opinion that Heard's erroneously admitted confession might have contributed to Jones' conviction. Certainly, we are unable to say beyond a reasonable doubt under the special circumstances of this case that the jury would have convicted defendant Jones without benefit of the challenged evidence.

For reasons stated, there must be a new trial

Reversed.