STATE OF NORTH CAROLINA v. ARTHUR THOMAS SANDERS

No. 7610SC979

(Filed 1 June 1977)

1. **Constitutional Law § 43— show-ups — failure to provide counsel — no error**

    Since defendant had not been formally charged with a crime at the time of two show-ups, it was not error to fail to provide defendant with counsel at the show-ups.

2. **Criminal Law § 66.10— show-ups — no suggestion leading to mistaken identification — testimony admissible**

    Show-ups involving defendant, a robbery victim, and a witness to the robbery were not so unduly suggestive as to lead to a substantial likelihood of mistaken identification, and the principle of due process therefore did not require exclusion of the testimony concerning the show-ups.

3. **Arrest and Bail § 3.11— arrest without warrant — delay in taking defendant before magistrate — show-ups — evidence inadmissible**

    Police officers who arrested defendant without a warrant violated G.S. 15A-501(4) by taking defendant to Cary for a show-up after they had first prepared to take him before a magistrate in Apex, and G.S. 15A-501(2) by failing to take defendant before a magistrate without unnecessary delay; such violations were substantial, and, pursuant to G.S. 15A-974(2), evidence obtained as a result of such violations was inadmissible against defendant. However, in view of the overwhelming evidence of guilt which was properly admitted, error in not suppressing evidence of the show-up was harmless beyond a reasonable doubt.

APPEAL by defendant from *McLelland, Judge.* Judgment entered 31 August 1976 in Superior Court, WAKE County. Heard in the Court of Appeals 4 May 1977.

Defendant appeals from his conviction for armed robbery. Evidence taken on *voir dire* at two pretrial hearings on motions to suppress evidence, and in open court at the defendant's trial, tends to show the following: At about 11:00 p.m. on 31 March 1976, the Convenient Food Mart in Cary was robbed. According to the testimony of James S. Manness, Jr., the assistant manager, the robber was a black male, approximately 5'10" tall and of medium build, who had purchased beer in the store earlier in the evening. He was allegedly armed with a .32 caliber nickle-plated Clerke revolver, and he wore bright sports clothes. He put the stolen money and checks into a brown paper bag. A second witness to the robbery, Mr. Grady Allen, also described the robber. According to Allen, he had begun to enter the Convenient Food Mart when he saw the robbery in progress. Apprehending danger, he hid outside the store in a place where he could see the robber as he fled, and from his hiding place Allen saw the robber leave the store. According to Allen's description, the robber was a black man, 5'8" tall, wearing a blue outfit which appeared to be a leisure suit. Allen tesetified that he saw the robber's face in good light, but Allen's description did not include any of the robber's facial features. Allen described the robber's car as a brown or beige over yellow Monte Carlo hardtop.

At 11:45 p.m. police officers from Apex, North Carolina, stopped an automobile which matched the description of the one used in the robbery. The driver of the car, defendant, fit the description of the robber, and he was immediately arrested. The officers searched the car and discovered a .32 caliber nickle-plated Clerke revolver and a paper bag containing money and checks payable to the Convenient Food Mart in Cary. The police then took defendant to the Apex police station. While there officers called a local magistrate and asked him to come to the station. However, before the magistrate arrived the police officers took defendant to the police station in Cary.

Shortly after arriving in Cary, the police showed the defendant to James Manness, manager of the Convenient Food Mart, in a show-up, that is, a one-man identification procedure. It took place before the defendant appeared before a magistrate. According to Manness's testimony at the first *voir dire,* the police called him on the telephone and asked him to come down and try to identify a suspect. Whether the police suggested that they had arrested "the fellow who did it" or merely said that they had in

custody a person who fit the robber's description was left unresolved by Manness's testimony. Manness also said that he had been able to identify the defendant at the show-up but that he was no longer able to identify the defendant as the robber. Manness explained that he recognized the defendant as the man whom he had identified at the show-up, but his recollection of the robbery was entirely overshadowed by his recollection of the show-up, and he no longer had an independent memory of the robber.

On the night of the robbery, Grady Allen was also called to the Cary police station to identify the defendant. Testifying at the second *voir dire,* Allen said that he carefully identified the defendant at the show-up, that this identification was the result of his recollection of the robbery and not of any suggestions made by the police, and that he still had a vivid memory of the robbery and could identify the defendant as the robber based on that memory. Allen admitted that he had a clear recollection of the show-up and that this contributed to his ability to recognize the defendant, but he said at the *voir dire* that his ability to recognize the defendant was based on his recollection of the robbery itself.

At the close of the respective *voir dire* hearings, the judge made appropriate findings of fact and concluded that James Manness's in-court identification of the defendant would be inadmissible because it would not be based on his independent recollection of the robbery. The judge also concluded that Grady Allen's in-court identification and his testimony concerning his out-of-court identification of the defendant would be admissible at trial. The show-up, the judge found, was not impermissibly suggestive, nor was it substantially likely to lead to irreparable misidentification.

At defendant's trial Grady Allen identified the defendant and also testified that he had previously identified the defendant at the show-up. The jury convicted the defendant, and he appeals from judgment sentencing him to forty years in prison.

*Attorney General Edmisten, by Assistant Attorney General William F. Briley, for the State.*

*Marvin Schiller for defendant appellant.*

State v. Sanders

ARNOLD, Judge.

Defendant contends that it was error for the court to admit testimony by the two witnesses, Manness and Allen, identifying him at the show-ups on the night of the robbery, and to allow the witness Allen to identify him in court. Three arguments in support of these contentions are set forth by defendant in an excellent brief prepared by his counsel. There is merit, however, in only one of his arguments.

[1] It was not error to fail to provide defendant with counsel at the show-ups. Nor was it error to fail to obtain a knowing and voluntary waiver of counsel from defendant. The constitutional right to counsel at an identification procedure does not attach until "the initiation of adversary *judicial* criminal proceedings whether by way of formal charge, preliminary hearing, indictment or arraignment." *Kirby v. Illinois,* 406 U.S. 682, 689, 92 S.Ct. 1877, 32 L.Ed. 2d 411 (1972) (emphasis added). *See, State v. Henderson,* 285 N.C. 1, 203 S.E. 2d 10 (1974). Defendant had not been formally charged at the time of the show-ups and, therefore, had no right to counsel. Since defendant's right to counsel was not abridged, the testimony concerning the out-of-court identification need not be excluded for that reason.

[2] Nor does the principle of due process require exclusion of the testimony concerning the show-ups. The test for due process is whether the "totality of circumstances" surrounding the identification procedure was so unduly suggestive that it created a substantial likelihood of mistaken identification. *Stovall v. Denno,* 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L.Ed. 2d 1199 (1967); *Neil v. Biggers,* 409 U.S. 188, 198, 93 S.Ct. 375, 34 L.Ed. 2d 401 (1972). The factors to be considered when making this test are the witness's opportunity to see the crime, his attentiveness, the accuracy of his prior description, the length of time between the crime and identification, and the degree of the witness's certainty. *Neil v. Biggers, supra,* at 199. The trial court paid appropriate attention to these factors in considering whether the show-ups were so likely to lead to misidentification that they violated due process. Findings of fact were made which fully support the judge's conclusions that the show-ups did not violate defendant's constitutional rights. Those findings are binding on this Court. *State v. Henderson, supra.*

For reasons just stated, it was not error for the court to allow *Grady Allen* to identify defendant in court. Since defendant had no right to counsel at the show-up, and since the show-up was not so suggestive as to violate due process, the in-court identification by Allen was untainted.

[3]  We now consider defendant's third argument in support of his contention that the court erred in permitting witness Manness to testify concerning pretrial identification, and witness Allen to testify concerning pretrial and in-court identification. Defendant asserts that all identifications were made at the show-up prior to taking defendant before a judicial officer in violation of the Criminal Procedure Act, specifically G.S. Ch. 15A, Sections 15A-501 and 15A-974.

In pertinent part G.S. 15A-501 provides:

"Upon the arrest of a person, with or without a warrant, but not necessarily in the order hereinafter listed, a law-enforcement officer:

. . . .

(2)  Must, with respect to any person arrested without a warrant . . . , take the person arrested before a judicial official without unnecessary delay;

. . . .

(4)  May, prior to taking the person before a judicial official, take the person to some other place if such action is reasonably necessary for the purpose of having that person identified; . . . . "

It is noteworthy that the General Assembly in the OFFICIAL COMMENTARY to G.S. 15A-501, has provided guidance for determining whether actions are "reasonably necessary" within the meaning of G.S. 15A-501(4). The OFFICIAL COMMENTARY says that subsection (4) is based on the American Law Institute's Model Penal Code of Pre-Arraignment Procedure, Tentative Draft No. 1, Sec. 3.09(1) (Alternate Provision), and the United States Supreme Court decision in *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed. 2d 1199 (1967). Based on the OFFICIAL COMMENTARY provided us by the legislature we gather that the words "reasonably necessary" have a stricter meaning than we would ordinarily apply. Apparently only exigent circumstances, such as were present in *Stovall v. Denno, supra,* where the only eyewitness was critically injured, will suffice as

"reasonably necessary." *Compare,* ALI, Model Code of Pre-Arraignment Procedure, Tentative Draft No. 1, Section 3.09 (1) (Alternate Provision) " . . . reasonably necessary for the purpose of having such person identified by a person in imminent danger of death or loss of faculties."

Arguments by the State that the Apex officers acted "reasonably" in view of the late hour, the difficulty in procuring a magistrate, and the benefits of a prompt identification are well taken. However, following the guidance which the legislature has provided we hold that the police officers violated G.S. 15A-501 (4) by taking defendant to Cary for a show-up after they had first prepared to take him before a magistrate in Apex, and G.S. 15A-501 (2) by failing to take defendant before a magistrate without unnecessary delay. Defendant had already been arrested under a showing of adequate probable cause, and it ill behooves the State to argue now that the magistrate may have been delayed or unable to come in the middle of the night. Under such circumstances G.S. 15A-501 (2) would have permitted police to hold defendant until morning, take him before a magistrate, and then submit him for proper identification procedures.

G.S. 15A-974 (2) requires that any evidence "obtained as a result of a *substantial* violation" of the Criminal Procedure Act be suppresesd if requested by timely motion (emphasis added). Whether a violation is "substantial" depends among other things on "(a) [t]he importance of the particular interest violated; (b) [t]he extent of the deviation from lawful conduct; (c) [t]he extent to which the violation was willful; (d) [t]he extent to which exclusion will deter future violations of [the Act]." Applying these tests we find that the violations of G.S. 15A-501 (2) and (4) were substantial. It was error to admit the evidence.

Nonetheless, in view of the overwhelming evidence of guilt which was properly admitted we hold that the error in not suppressing evidence of the show-ups was harmless beyond a reasonable doubt. In *State v. Knight,* 282 N.C. 220, 227, 192, S.E. 2d 283 (1972), Justice Huskins, writing for the Court, stated:

"In the factual context of this case, although the showing of only one photograph to the victim accompanied

State v. Sanders

by the statement 'we've got a man, is this the one' was impermissibly suggestive and evidence thereof incompetent, we hold its admission was 'harmless beyond a reasonable doubt.' [Citations omitted.] The unequivocal in-court identification of defendant by Mr. Garner, the presence of defendant's jacket in Mr. Garner's bedroom containing a letter addressed to the defendant, a certified birth certificate of defendant, and a Selective Service notice of classification bearing defendant's name, and the fact that the description of defendant's clothing given by Mr. Garner to the police was substantially similar to the actual clothing defendant was wearing when seen by Officer Poe about one hour after the burglary, constitutes evidence of guilt so overwhelming that, in our opinion, the impact of the photographic identification on the minds of the jurors was insignificant. Unless there is a reasonable possibility that the erroneously admitted evidence might have contributed to the conviction, its admission constitutes harmless error. [Citations omitted.]"

In addition to the positive in-court identification by the witness Allen, defendant matched the description of the robber given following the robbery; defendant's car matched the description of the robber's car; defendant had in his possession, within forty-five minutes of the robbery, a brown paper bag full of cash and checks payable to the Convenient Food Mart; defendant had in his possession a pistol identical to the one used by the robber. We are certain beyond a reasonable doubt that exclusion of the evidence would not have changed the verdict. *State v. Heard,* 20 N.C. App. 124, 201 S.E. 2d 58 (1973), *rev'd on other grounds,* 285 N.C. 167, 203 S.E. 2d 826 (1974) ; *see also,* 4 Strong's N. C. Index 3d, Criminal Law, § 169.1 (1976).

There are other contentions raised by defendant in this appeal which we do not find necessary to discuss. These contentions have been considered, and no prejudicial error is found.

No error.

Judges MORRIS and HEDRICK concur.