STATE OF NORTH CAROLINA v. JOHNNNY JORDAN

No. 8012SC356

(Filed 2 December 1980)

1. Criminal Law § 66.18— in-court identification — objection by defendant —
   failure to hold voir dire — harmless error

   The failure of the trial court to hold a voir dire examination and make
   findings of fact upon objection by a defendant to an in-court identification, while
   not approved, will be deemed harmless error where the record shows that the
   pretrial identification was proper or that the in-court identification of defendant
   had origin independent from the pretrial identification.

2. Criminal Law § 66.18— in-court identifications of defendant — voir dire not
   required

   The trial court did not err in failing to hold a voir dire examination of two
   witnesses concerning their identifications of defendant before they were allowed
   to testify, since one of the witnesses saw defendant at the sheriff's department
   within approximately one hour of the crime, but this pretrial confrontation was
   not impermissibly suggestive; the witness's in-court identification of defendant

was based upon her observation of defendant as their automobiles met on the highway and so the in-court identification was independent in origin from her confrontation of defendant at the sheriff's department; there was no evidence that the second witness ever saw defendant after their encounter at her home on the morning of the crime until the time of trial; and the second witness's identification was based upon a face to face conversation she had with defendant when he stopped at her door to ask directions.

3. Criminal Law § 102.5— cross-examination of defense witness — comment on truthfulness — failure of defendant to object — no correction by court required

The prosecutor's comments as to the truthfulness of defendant's witness were not so grossly improper as to require the trial court to correct them in the absence of defendant's objection at trial.

4. Criminal Law § 96— questions withdrawn from jury consideration — defendant not prejudiced

Defendant was not prejudiced by the prosecutor's asking of two improper questions concerning a witness's and defendant's involvement in unrelated offenses, since the defendant objected, both objections were sustained, and the jury was told by the court not to consider the questions.

APPEAL by defendant from *Braswell, Judge,* 29 November 1973 Session of Superior Court held in CUMBERLAND County. Heard in the Court of Appeals 16 September 1980.

Defendant was charged in cases numbered 72CR6611, 72CR-6613, 72CR6614 and 72CR6615 with felonious breaking, entering, larceny and receiving. He pleaded not guilty to all of these charges.

The evidence for the State tended to show the following: Defendant and his accomplice, Norris Wayne Horne (also known as Norris Wayne Benson), broke into four Cumberland County residences and took items of personal property therefrom without the authorization of the owners on the morning of 7 March 1972. The perpetrators of these crimes were driving a 1970 model red and white Cadillac with a U-Haul trailer attached.

On the day of the break-ins, defendant and Norris Wayne Horne were stopped and questioned by law enforcement officers at approximately noon. At that time, defendant was driving a red and white Cadillac with the U-Haul trailer attached. With defendant's permission, the officers searched the U-Haul trailer where they discovered many of the stolen items. Defendant and Norris Wayne Horne were placed under arrest for the offenses charged. In a search of defendant's vehicle pursuant to the arrest, the officers

found a number of weapons which had been taken from the residences earlier that morning.

Defendant's evidence consisted chiefly of the testimony of his alleged accomplice, Norris Wayne Horne. Horne testified that he had previously pleaded guilty to the same offenses with which defendant was charged. Although he admitted his own participation in these offenses, he claimed that the defendant had not been involved with him. Horne testified that he and a fellow prison escapee borrowed defendant's car to carry out the crimes on the morning of 7 March 1972, and when the law enforcement officers subsequently stopped him and the defendant for the search, defendant was unaware that the stolen items were in the trailer or the car.

In cases number 72CR6611, 72CR6613 and 72CR6615 the jury returned verdicts of not guilty as to the felonious breaking, entering, and receiving charges and verdicts of guilty to the charges of felonious larceny. In case number 72CR6614 the jury found defendant guilty of the felonious breaking, entering and larceny charges, but not guilty of the charge of felonious receiving. Defendant was sentenced by the court to four consecutive ten-year terms of imprisonment. Defendant appealed from the entry of these judgments.

Additional facts necessary for this decision are set forth in the opinion.

*Attorney General Edmisten, by Special Deputy Attorney General T. Buie Costen, for the State.*

*Assistant Public Defender Gregory A. Weeks for defendant appellant.*

MORRIS, Chief Judge.

In his brief defendant specifically abandons his assignments of error numbered one and three, and we, therefore, do not consider them here. Rule 28, N.C. Rules of Appellate Procedure.

By his second assignment of error defendant argues that the trial court erred by overruling his general objections to the in-court identifications of defendant by State's witnesses Hilda Gray and Emma Jones, and by denying his motion to strike the testimony of witness Gray. In conjunction with this argument, he contends that the trial court erred by failing to hold a *voir dire* examination of

these witnesses concerning their identifications before they were allowed to testify.

The record shows that State's witness Gray testified that on the morning the larcenies occurred she was at work. She was notified by her mother, who lived nearby, that someone was attempting to break into her home. Mrs. Gray's mother gave her a description of defendant's car as the one being used by the individuals entering her home. Mrs. Gray left work on the alert for a car fitting that description. On her way home she observed a red and white Cadillac pulling a U-Haul trailer. She slowed the speed of her own vehicle and was able to get a good view of the defendant who was driving the Cadillac and looking directly at her. Mrs. Gray testified that she was "approximately a hundred feet" from defendant's vehicle when she observed him.

Mrs. Gray later saw the defendant at the sheriff's department. As to the events of this encounter she testified:

I saw the defendant shortly after this incident down at the sheriff's department. There were detectives there at the time. I gave the detectives a description of the automobile that I had seen. At that time, I did not identify the defendant as being the driver of the car. I did tell the officers that the defendant looked like the driver of the car, but I would not swear that he was. This was within an hour after I had seen the car.

This is the only evidence of Mrs. Gray's confrontation with the defendant after the break-ins.

At the trial Mrs. Gray was allowed to make an in-court identification of the defendant over his objection. When asked if she could identify anyone in the courtroom as the driver of the red and white Cadillac she saw the day of the robbery she responded, "[w]ell, the defendant looks very much like him."

State's witness Emma Jones testified at trial that she lived across the street from one of the residences that was broken into on the morning of 7 March 1972. Early that morning she was at home when a man came to her door inquiring about the location of a certain mill. Mrs. Jones told this man that she did not know where the mill was located and she observed him return to the road where he had a red car parked. When Mrs. Jones was asked by the prosecu-

tor if she had ever before seen the man who came to her door the morning of the break-in, she replied:

A. Well, he looked like him; I couldn't say it is.

Q. Looked like him?

A. The one I seen.

Q. Who looks like him?

A. This one over here (indicating the defendant).

On cross-examination Mrs. Jones stated "I can't positively say that the defendant is the man who came to my house on that date." She also testified that she did not come to the sheriff's office in connection with these events nor did she see the defendant from the time of her encounter with him on the morning of the break-ins until trial.

[1] Defendant made general objections to the admission of each of these in-court identifications as they were made. However, he failed specifically to request a *voir dire* examination of either of the State's witnesses. A general objection has been held sufficient to cause the trial court itself to invoke the *voir dire* procedure in this situation. *State v. Stepney*, 280 N.C. 306, 185 S.E. 2d 844 (1972); *State v. Blackwell*, 276 N.C. 714, 174 S.E. 2d 534 (1970), *cert. denied*, 400 U.S. 946, 27 L.Ed. 2d 252, 91 S.Ct. 253 (1970). The courts are not, however, in every instance required to conduct a *voir dire* examination to determine the admissibility of an in-court identification. The general rule in this State is that the failure of the trial court to hold a *voir dire* examination and make findings of fact upon objection by a defendant to an in-court identification, while not approved, will be deemed harmless error where the record shows that the pretrial identification was proper or that the in-court identification of defendant had an origin independent from the pretrial identification. *State v. Stepney, supra; State v. Williams*, 274 N.C. 328, 163 S.E. 2d 353 (1968).

[2] State's witness Gray's identification meets both of the criteria set forth in this general rule. Substantially, all of the evidence in the record concerning Mrs. Gray's pretrial confrontation with the defendant is set out above. There is nothing to suggest that her encounter with defendant at the sheriff's department was improper or unnecessarily suggestive in any way. Our courts have held on numerous occasions that confrontations between a victim or wit-

ness and a suspect following the crime are not automatically so suggestive as to violate a defendant's constitutional rights. *State v. Thomas*, 292 N.C. 527, 234 S.E. 2d 615 (1977); *State v. Henderson*, 285 N.C. 1, 203 S.E. 2d 10 (1974); *State v. Saunders*, 33 N.C. App. 284, 235 S.E. 2d 94, *cert. denied*, 293 N.C. 257, 237 S.E. 2d 539 (1977); *State v. Ervin*, 26 N.C. App. 328, 215 S.E. 2d 845 (1975). The degree of suggestiveness of the pretrial confrontation must be judged by this Court from the circumstances surrounding the incident.

We must determine whether these circumstances were so unnecessarily suggestive and conducive to irreparable misidentification as to offend fundamental standards of decency, fairness and justice. *Foster v. California*, 394 U.S. 440, 22 L.Ed. 2d 402, 89 S.Ct. 1127 (1969); *Stovall v. Denno*, 388 U.S. 293, 18 L.Ed. 2d 1199, 87 S.Ct. 1967 (1967); *State v. Henderson, supra.*

The only facts in evidence concerning the witness's pretrial confrontation with the defendant are those quoted above from her testimony. These facts do not show that any impermissibly suggestive procedures were used by the authorities during the confrontation. There is no evidence which would indicate that the confrontation was planned. The only possible suggestive element is the fact that the confrontation occurred in the sheriff's office. We conclude that this pretrial confrontation was not impermissibly suggestive.

Even had the facts of this particular case indicated that the pretrial confrontation was impermissibly suggestive, they would still pass the second criterion of the general test of admissibility. An in-court identification is competent even if the pretrial confrontation was improper, if the State's witness's in-court identification is independent in origin from the pretrial confrontation. *Neil v. Biggers*, 409 U.S. 188, 34 L.Ed. 2d 401, 93 S.Ct. 375 (1972); *State v. Henderson*, 285 N.C. 1, 203 S.E. 2d 10 (1974); *State v. Knight*, 282 N.C. 220, 192 S.E.2d 283 (1972); *State v. Bass*, 280 N.C. 435, 186 S.E.2d 384 (1972). We think the "totality of the circumstances" requires the conclusion that witness Gray's in-court identification was independent in origin from her confrontation of the defendant at the sheriff's department. Her in-court identification of defendant was based upon her observation of the defendant as their automobiles met on the highway. The facts show that at the time Mrs. Gray initially saw the defendant she had been alerted to the breaking and entering of her home, and she was on the lookout for a car fitting the

distinctive description of the defendant's. Upon seeing defendant's car, she slowed her own car, and the defendant looked directly at her. On cross-examination she explained the uncertainty of her identification of the defendant upon direct examination by stating "I did not state on direct that the defendant was driving the car because, at that time, his hair looked a little bit lighter than it does now." We think that all of these factors taken together provide ample evidence that Mrs. Gray's in-court identification of defendant was independent in origin from their pretrial confrontation, and the failure of the trial court to order a *voir dire* examination was, therefore, harmless error.

The trial court's admission of State's witness Jones's in-court identification of the defendant without a *voir dire* examination was not erroneous for the same reasons. There is no evidence that Mrs. Jones ever saw the defendant after their encounter at her home on the morning of the robbery until the time of trial. Her testimony is based upon a face to face conversation she had with the defendant when he stopped at her door to ask directions. Without any evidence of a pretrial identification procedure that would impermissibly taint the witness's in-court identification we find that the trial court's failure to hold a *voir dire* examination of the State's witness was not in error.

One of the bases for defendant's argument that the admission of the identifications of State's witnesses Gray and Jones into evidence was prejudicial error is that their identification testimony was uncertain. A witness may give his opinion as to the identity of a person whom he saw sometime in the past. The witness's lack of positiveness in his identification affects only the weight to be given the testimony by the jury and not its admissibility. *State v. Brown,* 280 N.C. 588, 187 S.E. 2d 85, *cert. denied,* 409 U.S. 870, 34 L.Ed. 2d 121, 93 S.Ct. 198 (1972); *State v. Willis,* 22 N.C. App. 465, 206 S.E. 2d 729 (1974); *State v. Stitt,* 18 N.C. App. 217, 196 S.E. 2d 532 (1973). Defendant's argument is without merit.

By his fourth assignment of error defendant complains that the prosecutor committed prejudicial error by improperly questioning defendant's witness, Norris Wayne Horne. First, he objects to the prosecutor's assertion of his opinion on two occasions during his cross-examination that the defense witness was telling a lie. Second, he complains about questions repeatedly put to the same defense witness by the prosecutor concerning his and the defend-

ant's involvement in prior unrelated offenses. The improper question was repeated despite the court's sustaining defendant's objection thereto.

**[3]** As to defendant's complaint that the prosecutor should not have been allowed to give his opinion as to the witness's truthfulness, we note that defendant failed to object to these statements during the trial.

The general rule is that where no objection or exception is made at trial to the allegedly improperly admitted evidence, the appellant may not challenge the item for the first time on appeal. *State v. Smith*, 291 N.C. 505, 231 S.E.2d 663 (1977); *Sutton v. Sutton*, 35 N.C. App. 670, 242 S.E. 2d 244 (1978). Failure to object at trial is normally held to constitute a waiver of the error.

Defendant claims that the errors he cites in this instance come under an exception to this rule. He contends that the prosecutor's statements were so grossly improper that it was erroneous for the trial court not to have corrected them *ex mero motu*. As authority for this argument he cites *State v. Smith*, 240 N.C. 631, 83 S.E. 2d 656 (1954); and *State v. Locklear*, 294 N.C. 210, 241 S.E. 2d 65 (1978). Both of these cases are easily distinguishable from the case under consideration.

In the case before us the prosecutor's comments as to defendant's witness's answers to his questions consisted of the following:

> I ask you if you didn't say you took the diamond ring and over two hundred dollars from Mrs. Gray? *You know that is a lie.* You did not get the two hundred dollars from the Gray house that you got when you got the pistol? . . . *You know that is a lie don't you?*

In *State v. Smith, supra,* the statements were clearly grossly unfair and made by the State solicitor in his argument to the jury, not in cross-examination where the witness had an opportunity to deny them vigorously, as defendant did here.

In *State v. Locklear*, 294 N.C. 210, 241 S.E. 2d 65 (1978), the prejudicial statement occurred in the district attorney's cross-examination of the defendant, Clarence Leonard. The district attorney stated, "Clarence, you are lying through your teeth and you know you are playing with a perjury count; don't you? . . . Now,

think fast, Leonard. Think up a good story while you are up there."
294 N.C. at 214-15; 241 S.E. 2d at 68. The Court held that the trial
court erred in allowing the statement to remain for jury considera-
tion and that defendant's failure to object to these comments did not
constitute a waiver of the error on appeal. The Court stated:

> Yet, even absent an objection, "it may be laid down as
> law, and not merely discretionary, that where the counsel
> *grossly* abuses his privelege, to the manifest prejudice of
> the opposite party, it is the *duty* of the judge to stop him
> then and there. And if he fails to do so and the impropri-
> ety is gross, it is good ground for a new trial." *Jenkins v.
> Ore. Co.*, 65 N.C. 563, 564-65 (1871); . . .

294 N.C. at 218, 241 S.E. 2d at 70. The Court emphasizes the fact
that counsel must make *grossly* improper statements in order for
the exception to the rule to apply.

The evidence presented by the State in the instant case
strongly suggests that defendant was guilty of the crimes charged.
The prosecutor was trying to impeach the defense witness on cross-
examination when he made these allegedly improper statements.
He was endeavoring to point out inconsistencies in the statements
made by the witness on direct examination and those he made on
cross-examination. The prosecutor's reasoning was warranted by
discrepancies in the evidence.

We have considered the totality of the facts and the nature of
the wording of the prosecutor's statements in the present case. We
do not think that these statements reach the level of the grossly
improper statement which would require us to find sufficiently
prejudicial error in the trial court's failure to correct them *ex mero
motu*. We hold that since the defendant failed to object to these
statements at trial, any error was waived.

We certainly discourage the making of statements similar to
those which the prosecutor made in this case. However, in view of
the overwhelming evidence of defendant's guilt presented by the
State in this case, the prosecutor's remarks could not have contrib-
uted to conviction. *See State v. Thompson*, 278 N.C. 277, 179 S.E. 2d
315 (1971).

**[4]** In the same assignment of error defendant asserts that the
following cross-examination of defense witness, Norris Wayne

Horne, by the prosecutor was improper:

Q. What were you and Mr. Johnny Jordan going to do with the jewelry?

ATTORNEY NIMOCKS: OBJECTION.

COURT: SUSTAINED. Do not consider the question, Members of the Jury; the Court rules it is not competent in any way.

Questions continued by Attorney Grannis:

Q. I ask you if the defendant, Johnny Jordan was not arrested on the same break-ins in Kinston that you were arrested on?

ATTORNEY NIMOCKS: OBJECTION.

COURT: SUSTAINED.

ATTORNEY NIMOCKS: I would like to argue in front of the jury, if this line of questioning is going to continue. I am perfectly willing to bring out the whole thing in front of the jury.

COURT: Both of you sit down. OBJECTION SUSTAINED.

The reason for his complaint is that the prosecutor's questions dealt with unrelated offenses committed by the defense witness and the alleged involvement of the defendant with the witness in those offenses.

The record shows that the prosecutor asked only two improper questions concerning this matter, to both of which the defendant promptly objected. Both of defendant's objections were sustained, and the jury was told by the court not to consider the questions. Any error in these questions was amply remedied by the actions of the trial court.

Finally, defendant contends that because he was denied his constitutional right to the effective assistance of counsel he is entitled to a new trial.

The general rule is that the caliber of an attorney's representation in a criminal prosecution is a denial of the constitutional rights

Oxendine v. Dept. of Social Services

of his client only when it is so lacking that the trial becomes a farce and mockery of justice. *State v. Sneed*, 284 N.C. 606, 201 S.E. 2d 867 (1974), and cases cited therein. The record discloses that defendant's trial counsel presented evidence on the defendant's behalf, entered objections to the State's evidence, and conducted effective cross-examination of the State's witnesses. It is quite clear that defendant's representation at trial was not so lacking that his trial became a farce and mockery of justice. His constitutional rights were not violated.

The defendant has had a fair and impartial trial free from prejudicial error.

No error.

Judges HEDRICK and WHICHARD concur.