CALABRIA, Judge.
Donald Wayne Locklear ("defendant") appeals from judgments entered upon jury verdicts finding him guilty of first-degree rape and first-degree burglary. We find no error at trial but remand for resentencing.
On 30 December 1999, Amy Barrineau ("victim") was at her residence with her two minor children, ages eight months and two years. The victim fell asleep watching television on her couch at approximately 11:00 p.m. Soon after, she was awakened by defendant pulling her off the couch. Defendant put his arm around her neck and placed what she thought was a knife to her throat. Defendant told her, "Don't look at me or I'll slit your f***ing throat." Defendant led her into the bedroom and told her to lay down on the bed. He then removed her underwear and told her to take off the rest of her clothes. After removing his clothes, defendant had sexual intercourse with the victim, during which he told the victim that he could easily kill her, would not hurt her kids, and had easily gotten into her house.
Defendant then asked the victim to turn on the lights and instructed her to turn around and look at him. Next he asked her to again lay down and began to fondle her breasts. When the victim's eight-month-old daughter started crying, defendant told the victim to get up and take care of her. Defendant followed the victim while she put her daughter back to sleep. He then forced her back into the bedroom. The victim informed defendant that she had taken some medicine to help her sleep and that she was tired. The victim "begged defendant not to have sex again", but defendant told her to "hush" and once again stated how easily he could kill her. Defendant instructed the victim to lay down on the bed and then had sexual intercourse with her a second and third time.
Afterward, defendant told the victim several times that he knew that she was going to call the law. He told her that she "better tell them to come straight, because his whole family would be shooting." He reiterated how easily he had entered the victim's house by prying her door lock open with a knife. After the victim swore not to call the police, defendant left the house. The victim dressed, turned off the lights in her house, and waited for fifteen minutes before waking her two children and going to her neighbor's to call the police.
After Deputy McGee ("McGee") and Deputy Pate ("Pate") arrived, the victim informed them defendant had broken into her house and raped her. McGee examined the lock on the victim's back door and discovered marks indicating someone had pried it open. McGee escorted the victim to Scotland Memorial Hospital where Dr. Robert Zadi, the attending physician, prepared a rape kit. Officer Lemmond, who arrived at victim's residence subsequent to McGee and Pate, later obtained blood samples from defendant and a comparison of DNA by a State Bureau of Investigation expert revealed the DNA obtained from the victim "matched" that of defendant.
At trial, over defendant's objection, the State's witness, a Scotland County Deputy Clerk ("the Clerk"), read a portion of a trial transcript from a previous trial in which defendant was tried for the rape of Teresa Donnell Parker ("Parker"). After reading these portions of the transcript into the record, the Clerk, over defendant's objection, also read that the defendant had been convicted of second-degree rape, and included the case number of the conviction as well as defendant's date of birth. Subsequently, defendant's conviction was admitted into evidence. The trial court gave the requested instruction to the jury that the conviction was only being received in evidence for the purpose of showing identity, motive, intent, or purpose and not to show defendant had a propensity to commit certain offenses. Defendant did not testify.
The jury returned verdicts of guilty of first-degree rape and first-degree burglary. During the sentencing phase of the trial, the State proffered defendant's following prior convictions: attempted first-degree burglary, second-degree burglary, assault inflicting serious injury, attempted escape from the North Carolina Department of Correction, breaking and entering, second-degree rape, and assault on a government officer. Based on defendant's convictions, the judge calculated his prior record level as a level four. The State then presented testimony from the victim that, as a result of defendant's attack, she had trouble sleeping, had nightmares, developed a drug and alcohol addiction, and received mental health treatment. The State also directed the trial court's attention to the following: (1) the young ages of the victim's minor children, who were present in the house at the time of the crimes; (2) the evidence of defendant's kidnapping of the victim; and (3) the evidence of defendant raping the victim three separate times.
Regarding the first-degree rape conviction, the trial court found as aggravating factors that defendant (1) inflicted serious, permanent, and debilitating injury on the victim and (2) raped the victim three separate times during the attack. Regarding the first-degree burglary conviction, the trial court found as an aggravating factor that defendant committed the crime while the victim's two young children were in the house. As mitigating factors applicable to both convictions, the trial court found that defendant supported his family and had a community support system. The trial court determined that the aggravating factors outweighed the mitigating factors and sentenced defendant in the aggravated range for both convictions. The trial court sentenced defendant consecutively to (1) a minimum of 480 to a maximum of 585 months in the custody of the North Carolina Department of Correction for the first-degree rape conviction and (2) a minimum of 146 months to a maximum of 185 months in the custody of the North Carolina Department of Correction for the first-degree burglary conviction. Defendant appeals.
In his first assignment of error, defendant asserts that the trial court committed reversible error under State v. Wilkerson, 356 N.C. 418, 571 S.E.2d 583 (2002) by permitting the Clerk to impeach defendant's credibility with a prior conviction when the defendant did not take the stand and testify. "In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C. R. App. P. 10(b)(1) (2005). "Failure to object at trial is normally held to constitute a waiver of the error." State v. Jordan, 49 N.C. App. 561, 568, 272 S.E.2d 405, 410 (1980). Where a defendant waives the error by failing to object, he may nonetheless assert the alleged error as "the basis of an assignment of error where the judicial action questioned is specifically and distinctly contended to amount to plain error." N.C. R. App. P. 10(c)(4) (2005). However, where defendant fails to assert plain error in his assignments of error, he in not entitled to plain error review.State v. Wilson, 158 N.C. App. 235, 240, 580 S.E.2d 386, 389 (2003).
During the trial, the Clerk read into evidence a portion of a trial transcript from a previous trial in which defendant was tried for the rape of Parker. Defendant objected "unless there's a limiting instruction so the jury's aware that it is to - as to this matter - sic for the purpose of this matter being entered." The Court proceeded to give a limiting instruction addressing the purpose for which the evidence could be considered. After reading the transcript into evidence, the Clerk was asked: "Would you tell the jury for what this defendant was convicted" in the previous trial. The Clerk responded "...second degree rape." Defendant's attorney objected "for the same reasons stated earlier." The trial court overruled defendant's objection and at the request of defendant, repeated the same limiting instruction to the jury regarding defendant's prior conviction, by explaining to the jury that the Clerk's testimony was being introduced, not to show defendant had a propensity to commit certain offenses, but for the limited purpose of showing identity, motive, intent or existence in the mind of defendant of a common plan or scheme.
Defendant presented no other objections to the trial court. In short, defendant asked for and received limiting instructions; no further action by the trial court was sought. The trial court fulfilled defendant's requests and cautioned the jury by specifically repeating the same limiting instruction twice. Defendant thus did not properly preserve this issue for appellate review under N.C. R. App. P. 10(b)(1). Further, defendant is not entitled to plain error review because he failed to include a specific allegation in both his assignments of error and his brief to this Court that the trial court committed plain error.
The defendant next assigns as error that the trial court sentenced him in the aggravated range without the finding of the existence of aggravating factors by a jury in violation of Blakely v. Washington, 542 U.S. 296, 159 L. Ed. 2d 403 (2004). We agree. In State v. Allen, our Supreme Court considered the applicability of Blakely to North Carolina's Structured Sentencing Act, and held that "those portions of N.C.G.S. § 15A-1340.16(a), (b), and (c) which require trial judges to consider evidence of aggravating factors not found by a jury or admitted by the defendant and which permit imposition of an aggravated sentence upon judicial findings of such aggravating factors by a preponderance of the evidence violate the Sixth Amendment to the United States Constitution." Allen, 359 N.C. 425, 438-39, 615 S.E.2d 256, 265 (2005). Furthermore, the Court held that "the harmless-error rule does not apply to sentencing errors which violate a defendant's Sixth Amendment right to jury trial pursuant to Blakely. Such errors are structural and, therefore, reversible per se." Id. at 449, 615 S.E.2d at 272. Because the trial court sentenced defendant in the aggravated range after finding factors in aggravation based on a preponderance of the evidence, we remand for resentencing.
No error at trial. Remanded for resentencing.
Judges ELMORE and GEER concur.
Report per Rule 30(e).